Borough of Franklin Park, Appellant *v.* Atlas Development Company and J. Richard Porter and Elizabeth Porter, his wife, Appellees.

418

Argued March 14, 1985, before Judges DOYLE and PALLADINO, and Senior Judge KALISH, sitting as a panel of three.

*William W. Milnes, Brandt, Milnes & Rea,* for appellant.

*James H. Joseph, James H. Joseph, P.C.,* for appellees.

OPINION BY JUDGE DOYLE, August 29, 1985:

The Borough of Franklin Park (Borough) appeals the order of the Court of Common Pleas of Allegheny County sustaining the appeal of Atlas Development Company (Atlas) and J. Richard Porter and Elizabeth Porter (the Porters) from the decision of the Borough Council to reject Atlas' preliminary subdivision plan (Plan). The trial court's order further required that Atlas' Plan not be rejected for failure to

comply with certain conditions imposed by the Borough Council.

At the time that Atlas submitted its Plan to Borough Council, it was the equitable owner of a tract of land (Porter property) located within the Borough under an agreement of sale with the Porters. This tract is slightly more than five acres and contains a single family dwelling which was used by the Porters as their residence. The Porter property lies in the northeastern corner of the Borough and it is bounded on the west by Cole Road, a Borough street which runs generally in a north-south direction; on the east by the political boundary line dividing the Borough from Pine Township; on the north by a property owned by a Mr. and Mrs. Workman (Workman property) and on the south by a property owned by a Mr. and Mrs. Winner (Winner property). The Porter property is in an R-2 Residential District under the Borough's zoning ordinance.

Directly across the political boundary from the Porter property, Atlas also owns a ninety-three acre tract in Pine Township which it intends to develop both commercially as a shopping center, and residentially for townhouses of up to 240 units on a twenty-one acre section which most immediately abuts the Porter property. According to the Plan, Atlas proposes to build seven single family residences, a use permitted in the R-2 district, together with a public street, designated on the Plan as Village Drive, which will be situate in an east-west direction and is intended to communicate with the townhouse project. Village Drive to Cole Road is the only planned access to the townhouses because access to the remaining seventy-two acres of Atlas' Pine Township property is impeded by a ravine between the proposed sites of the townhouse project and the commercial development,

which in Atlas' opinion renders such access economically infeasible.

After Atlas remedied certain technical violations of the Borough's subdivision ordinance (Ordinance), the Borough Planning Commission approved the Plan and transmitted it to Borough Council. On August 17, 1983, Borough Council, after appropriate public notice, convened a public meeting to consider the Plan. At the conclusion of that meeting, the Borough Council approved the Plan subject to the following conditions:[1]

1. That Village Drive as shown on said plan be designed to cul-de-sac [sic] at the Easterly [sic] terminus thereof and the preliminary subdivision plan be adjusted or redrawn to so provide.

2. That access to and from Pine Township, when the proposed development in Pine Township has been determined, shall be subject to the approval or disapproval of the Borough Council of the Borough of Franklin Park.

3. That access to the property lying immediately to the south of [the Porter property] (now or formerly of Winner) be afforded through Village Drive because the proposed [Porter property] plan effectively blocks or prohibits the development of the Winner property.

Counsel for Atlas and the Borough Solicitor agreed to extend the time within which Atlas could accept or reject the conditional approval of the Plan and the time within which the Borough would be required, upon Atlas' rejection of the conditional approval, to

---

[1] The conditions were set forth in a September 19, 1983 letter from the Borough Solicitor to Atlas' counsel.

state in writing the reasons for the conditions. On September 15, 1983, Atlas notified the Borough of its rejection of the conditions and, in a letter dated September 19, 1983, the Borough Solicitor advised Atlas of the specific provisions of the Ordinance upon which the Borough relied to justify imposing the conditions.[2]

Atlas appealed the imposition of the conditions to the common pleas court which concluded that the Plan complied with the standards set forth in the Ordinance and that Borough Council's failure to approve the Plan as submitted was an abuse of discretion. The common pleas court took no additional evidence; therefore, our review is limited to determining whether the local governing body abused its discretion or committed an error of law. *Goodman v. Board of Commissioners of the Township of South Whitehall*, 49 Pa. Commonwealth Ct. 35, 411 A.2d 838 (1980). Accordingly, we must examine the specific sections of the Ordinance upon which the Borough Council relied as each relates to the Plan.

Article IV of the Ordinance sets forth the standards governing the design, plans and specifications for subdivisions within the Borough. Section 1 thereof, captioned "General", provides:

---

[2] Under Section 508 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 55 P.S. §10508, a municipality may approve a subdivision plan subject to conditions only if such conditions are accepted by the applicant and where, as here, such conditions are not accepted by the applicant, the municipality is deemed to have rejected the plan. *Board of Commissioners of Annville Township v. Livengood*, 44 Pa. Commonwealth Ct. 336, 403 A.2d 1055 (1979). Where there is a rejection, there must be written notice of specific defects in the plan, describing the requirements which have not been met and citing the provisions of the Ordinance upon which the municipality relies. *Id.*

> [t]he arrangement, character, extent, width, grade and location of all streets shall conform to this ordinance and to the Borough Master Plan or Borough Official Map if either exists, and shall be considered in their relation to existing and planned streets, to topographical conditions, to public conveniences and safety and in their appropriate relation to the proposed uses of the land to be served by such streets. Every subdivision shall have access to a major public thoroughfare.

The Borough Solicitor, in his September 19, 1983 letter, acknowledged that the foregoing "may not be sufficiently specific to warrant rejection of a plan if compliance is not found." The only value of such an obviously general statement is, as the Solicitor suggested, to "provide guidance in interpreting Section 2 of Article IV." Only the final sentence of Section 1 is of such specificity that it provides us with an acceptable reviewable criterion here and since there is no contention that, with the construction of Village Drive, the subdivision would not have access to Cole Road, a major public thoroughfare, the Plan satisfies this access requirement. Therefore, the only possible condition in Section 1 of Article IV applicable to the factual situation before Borough Council has been met.

Next, the Borough turned to Section 2 of Article IV of the Ordinance, entitled "Streets," and its various subsections to support its decision. Section 2A1, provides that, "[i]n general, all streets shall be continuous and in alignment with existing streets, and shall compose a convenient system to insure circulation of vehicular and pedestrian traffic, fast and efficient fire, public and police protection service." The Borough contends that this constitutes a judicially re-

viewable requirement. Borough Council concluded that Village Drive failed to conform to that standard because it will serve the proposed *Pine Township* townhouse development and that because no direct access to the townhouses is planned through Pine Township, any Pine Township, police, fire or other emergency vehicles would have to travel through other municipalities, one of which would be the Borough, to reach the townhouses.

First, we must reject the argument that Section 2A1 erects a judicially reviewable standard by the use of such terms as "convenient system" and "fast and efficient," which are so vague as to be suitable for nothing more than stating general ideals or goals. *See Goodman.* Furthermore, it is clear from the Solicitor's letter that the Borough Council is concerned *only* with the inconvenience of traffic to and from *the townhouses* and the speed and efficiency of public safety services to *the townhouses.* Such matters, it seems to us are not properly the concern of the Borough of Franklin Park, but would be for the consideration of the Pine Township authorities; otherwise, Borough Council could block or control development outside of its jurisdiction. This is not to say that the Borough cannot take into consideration and weigh circumstances in surrounding municipalities as those circumstances would impact upon and effect its own fire safety and police protection. It clearly could; however, such is not the situation here. Therefore, inasmuch as Village Drive clearly conforms to any acceptable standard in Section 2A1 in relation to the Plan, there can be no condition attached for approval of the Plan based on that section of the ordinance.

The third source of authority upon which the Borough relies is Section 2A2, which provides:

[w]here it is impractical for streets to be continuous or to conform to existing streets then these streets shall conform to a plan for the neighborhood as approved or adopted by the Borough Council to meet the particular community problem or situation where topographical or other conditions make it necessary.

There is nothing in this case to suggest it would be impractical for Village Drive to be continuous from Cole Road to the Pine Township boundary. Again, the Solicitor's letter reveals that the focus of the Borough Council's concerns is the townhouse development and the "community problems" which were anticipated if the residents of the townhouses are to be allowed access to Cole Road via Village Drive. Several residents of the general area surrounding the Porter property commented at the public meeting that they expected traffic conditions on Cole Road to worsen due to increased traffic flows emanating from the townhouses. Also, some area residents produced documents showing that Cole Road currently is considered hazardous as a school student walking route.[3] While there can be little doubt that if the townhouses are developed as currently planned and the only access thereto is Cole Road through Village Drive, such problems as exist presently on Cole Road will be exacerbated; nevertheless, the conditions established by Borough Council reflect an interpretation of the Ordinance which causes various sections thereof to conflict. As is explained below, Sections 2B4 and 8 operate to extend streets of new subdivisions to the boundaries of the tract. To require a cul-de-sac and

---

[3] See Sections 1362 and 2541 of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §§13-1362 and 25-2541. See also Regulations of the Pennsylvania Department of Transportation, Hazardous Walking Routes, 67 Pa. Code §§447.1-.4.

a reserve strip to prevent increased traffic from the townhouses under Section 2A2 results in an inconsistent application of the provisions of the Ordinance. The imposition of the conditions here involved would cause a conflict between Section 2A2 and Sections 2B4 and 8 related below. Therefore, Borough Council cannot justify its conditions by reliance on Section 2A2.

The final provisions of the Ordinance cited by the Borough Solicitor are Sections 2B1, 4 and 8, which read as follows:

1. Minor streets shall be laid out wherever possible so that their use by through traffic will be discouraged.

\* \* \* \*

4. Reserve strips controlling access to streets in existing and/or future extensions thereof shall be prohibited except where the control and ownership is placed in the Borough under conditions approved and accepted by the Borough Council.

\* \* \* \*

8. Where adjoining areas are not subdivided the arrangement of streets in the new subdivision shall make provision for the proper projection of the streets. Where a new subdivision adjoins unsubdivided land susceptible of being subdivided, then the new streets shall be carried to the boundaries of the tract proposed to be subdivided.

Paragraph 1 was employed by the Borough Council to prevent access to Cole Road by residents of the townhouses. The Borough argues that through traffic would thus be discouraged "wherever possible." The Borough attempts to distinguish *Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township,* 21 Pa. Commonwealth Ct. 137, 344 A.2d 277

(1975), which held that the phrase "to the fullest extent possible" in a subdivision ordinance which specified that the distance between access roads shall be "to the fullest extent possible," rendered that provision merely advisory in nature because of the result a strict application of the ordinance provision would achieve. According to the Borough, a strict adherence to the provision in the ordinance in *Harrisburg Fore* would have resulted in fewer lots and displacement of certain planned apartment buildings which could have caused violations of other sections of the subdivision ordinance there involved. In the instant case, the Borough argues, no lots will be lost from the Plan due to the cul-de-sac. Such an argument, however, ignores a consideration of *Harrisburg Fore, i.e.,* that other sections of the ordinance involved not be violated by the conditions. Such a consideration is of particular import here because the requirement of the cul-de-sac with the reserve strip will violate the Section 2B4 prohibition against reserve strips not controlled and owned by the Borough. Moreover, the condition imposed by the Borough here does not indicate any intent by the Borough to approve and accept control and ownership of the reserve strip if created as required by Section 2B4. This rule would apply even though the Borough's argument effectively attempts to amend Section 2B4 *sub silentio* by advocating the position that Section 2B4 applies only to such situations where a reserve strip is sought to be created between two properties *within* the Borough and does *not* apply when one of the properties involved, as here, is in another municipality. However, there is no indication in Section 2B4, express or implied, that it was not intended to apply to all subdivision plans without regard to the position of such a plan vis-a-vis the Borough's territorial limits.

Just as the Borough's attempt to reconcile its erroneous interpretation of Section 2B4 in this case was unsuccessful, the Borough's effort to justify the imposition of the cul-de-sac on the Plan in disregard of the language of Section 2B8 must also fail. As with Section 2B4, there is no express or implied authority in Section 2B8 to treat a subdivision plan differently merely because the tract of land involved adjoins another municipality. As the Borough acknowledges in its brief, the conditions imposed here were an attempt to limit the impact on Franklin Park due to the development in Pine Township. While it is understandable that the Borough may wish to do so, it cannot misapply the provisions of its subdivision ordinance to achieve its ends. A municipality may not condition its preliminary approval of a subdivision plan upon standards not contained in its ordinance. *Appeal of William Fiore Etc.*, 74 Pa. Commonwealth Ct. 328, 459 A.2d 911 (1983).

Finally, Borough Council conditioned preliminary approval of the Plan on the creation of a street connecting Village Drive to the Winner property and relies on Section 2B8 as authority therefor. Such authority, however, cannot be found in that section unless a strained interpretation is applied, one which would render those provisions without rational meaning. The plain meaning of Section 2B8 would require Village Drive, the only street contemplated by the Plan, to extend to the Pine Township boundary. It would *not* require a perpendicular offshoot from Village Drive to the Winner property.

For all of the reasons stated above, we must agree with the legal conclusion of the common pleas court that the Borough Council abused its discretion by disapproving the Plan as submitted.

### ORDER

Now, August 29, 1985, the order of the Court of Common Pleas of Allegheny County, dated May 1, 1984, is affirmed.