110 Pa. Commonwealth Ct. 293 (1987)
532 A.2d 906
Irwin J. Stein, Appellant
v.
Easttown Township Board of Supervisors, Appellee.
Irwin J. Stein, Appellant
v.
Easttown Township Zoning Hearing Board, Appellee.
Nos. 1761 C.D. 1986 and 1762 C.D. 1986.
Commonwealth Court of Pennsylvania.
October 16, 1987.
Argued June 8, 1987.
*294 Before Judges CRAIG, DOYLE and Senior Judge KALISH, sitting as a panel of three.
*295 John C. Snyder, with him, Sean A. O'Neill, Lentz, Cantor, Kilgore & Massey, Ltd., for appellant.
John S. Halsted, Gawthrop, Greenwood & Halsted, for appellee.
OPINION BY JUDGE DOYLE, October 16, 1987:
In this consolidated appeal, Irwin J. Stein (Appellant) appeals from two orders of the Court of Common Pleas of Chester County, one affirming the denial by the Board of Supervisors of Easttown Township (Board) of Appellant's preliminary land development plan and application, and the other affirming a decision of the Easttown Township Zoning Hearing Board (ZHB) denying Appellant's application for a special exception. We reverse both orders.
Appellant is the owner of .585-acre tract located in Easttown Township in the "B-Business District." On this tract, Appellant sought to construct a nineteen-unit apartment complex, including an adjacent parking lot. It is uncontested that the apartment development is a permitted use in the "B-Business District." Accordingly, in 1981, Appellant submitted to the Board a preliminary land development plan and application.
In connection with the proposed development, Appellant also applied to the Pennsylvania Department of Environmental Resources (DER) for a permit for the enclosure and piping of a stream that traverses the front portion of the property. Appellant ultimately sought to *296 cover the piped stream with fill and place the parking lot on top of it.
Additionally, in October 1984, Appellant applied to the ZHB, requesting that it either grant him a special exception under Section 1504 of the Easttown Township Zoning Ordinance for the parking lot and concomitant piping and enclosure of the stream or, alternatively, rule that the proposed parking lot and stream enclosure constituted a permitted use subject only to DER approval.
On January 24, 1985, the ZHB ruled that the proposed parking lot and stream enclosure was not a permitted use, but required a special exception,[1] and it then denied Appellant's request for the special exception. While Appellant's appeal of this decision was pending before the common pleas court, the Board voted to deny Appellant's application for preliminary land development approval. Appellant appealed this decision as well to the common pleas court, which consolidated the appeals. Without taking any additional evidence, the trial court affirmed both the decision of the ZHB and the decision of the Board, and Appellant appealed to this Court.[2]

*297 The Decision of the Zoning Hearing Board

Turning our attention first to the trial court's affirmation of the ZHB decision, Appellant advances three arguments: 1) that the parking lot and stream enclosure is a permitted use under the zoning ordinance; 2) that, in any event, DER has exclusive jurisdiction respecting construction and use of the proposed stream enclosure; and 3) that, even if the zoning ordinance requires a special exception for the parking lot and stream enclosure and DER does not have exclusive jurisdiction, Appellant is entitled to a special exception.
There is no dispute that the stream sought to be piped and enclosed by Appellant is located in a flood hazard district. Accordingly, we must read Section 1504 of the zoning ordinance, entitled "Flood Hazard District Uses," to determine whether the proposed use is a permitted use or requires a special exception.
Section 1504(1) of the zoning ordinance provides in pertinent part:

Permitted Uses: The following uses and no others shall be permitted within the Flood Hazard District to the extent that they are not prohibited by any other Article of this Ordinance and provided that they do not require structures, substantial improvements to existing structures, fill, mobile homes, or outdoor storage of materials or equipment.
. . . .
(d) Permeable parking areas and roads to serve other permitted uses. . . .

Applications for permitted uses requiring changes in the flood plain should include after development use calculations. The Water Obstructions Act, as written in Chapter 105 of Title 25 of the Pennsylvania State Code, regulates *298 dams, obstructions, and other structures `along, across or projecting into all streams and bodies of water,' as well as changes in the course current, cross-sections or location of any stream in the Commonwealth of Pennsylvania. Submission of plans and calculations in accordance with Department of Environmental Resources criteria must be made to D.E.R. and a permit obtained whenever an alteration or obstruction of a stream or body of water is contemplated. . . .
Easttown Township, Pa., Zoning Ordinance §1504(1) (1981) (emphasis added).
Appellant first argues that the enclosure of the stream in order to place a parking lot atop, is a permitted use under Section 1504(1). A plain reading of that Section, however, compels us to disagree. While permeable parking lots are permitted uses in the flood hazard district, see §1504(1)(d), in order to accomplish this, Appellant proposes to first pipe the stream and cover it with fill. Section 1504 expressly and clearly states that uses requiring fill are not permitted uses. When words of a zoning ordinance are clear and unambiguous, the letter of the ordinance is not to be disregarded. Lucia v. Zoning Hearing Board of Upper St. Clair Township, 63 Pa. Commonwealth Ct. 272, 437 A.2d 1294 (1981), cf. 1 Pa. C. S. §1921(b). Accordingly, the ZHB did not err in ruling that Appellant's proposed manner of use was not a permitted use in the flood hazard district.
Appellant next asserts that, even if a special exception is required for his proposed use, he demonstrated his entitlement to one under the zoning ordinance, and the ZHB abused its discretion by denying the special exception.
Under Section 1504(3)(a) of the zoning ordinance, any use not specifically prohibited by Section 1504(2) is *299 permitted by special exception in the flood hazard district if an applicant meets certain enumerated criteria. There is no dispute that Appellant's proposed use would be permitted if the criteria were met. The ZHB, however, found that Appellant failed to satisfy criteria (1), (2) and (5) of Section 1504(3)(a), which provides that one seeking a special exception must demonstrate:
(1) That there is no danger to life or property due to increased flood heights or velocities caused by any encroachment permitted by such granting of special relief. . . .
(2) That there is no danger that materials may be swept onto other lands or downstream to the injury of others.
. . . .
(5) That the proposed use is not susceptible to flood damage when the lands are inundated to the base flood level.
Easttown Township, Pa., Zoning Ordinance §1504 (3)(a) (1), (2), (5).
Appellant's proposal called for constructing headwalls at the north and south points of the stream as it traverses his property, connected by piping. The northern (up-stream) headwall would have iron bars to prevent large pieces of debris from clogging the pipe or being swept downstream. The southern headwall would open into a filling basin in order to spread the flow of water coming through the piping, thereby decreasing the water's velocity.
The ZHB based its denial of the special exception on the testimony of the engineer for intervenor Easttown Township, who testified that he was concerned that, if routine maintenance of the headwalls was not performed, sediment could accumulate at the south headwall and cause increased water velocity, and debris could clog the north headwall and cause the stream to *300 flood. Therefore, the ZHB ruled that Appellant failed to satisfy criteria (1), (2) and (5) of Section 1504(3)(a) of the zoning ordinance.
This Court agrees with Appellant, however, that this constituted an abuse of discretion by the ZHB. For a special exception, an applicant has the duty to present evidence and the burden of establishing that the proposed use is one permitted by special exception, and that the use is in compliance with the applicable specific requirements of the zoning ordinance. Bray v. Zoning Board of Adjustment, 48 Pa. Commonwealth Ct. 523, 410 A.2d 909 (1980). The counter obligation of presenting evidence with respect to a general detriment to health, safety and welfare lies with the objector. Id. The objector must show that any adverse impact as a result of the proposed use is abnormal, and that there is a high probability of occurrence. Warren County Probation Association v. Warren County Zoning Hearing Board, 50 Pa. Commonwealth Ct. 486, 414 A.2d 398 (1980).
Here, with respect to maintenance of the stream enclosure, Appellant demonstrated that it submitted a bond to DER for just this purpose. Moreover, numerous DER regulations require the regular maintenance of stream enclosures. See 25 Pa. Code §§105.19, 105.51-105.54, 105.71, 105.211. We believe this constituted sufficient evidence to satisfy the criteria of Section 1504(3)(a) of the zoning ordinance, and the Board's ruling constituted error. Moreover, the objector, Easttown Township, never presented any evidence that a special exception would have an abnormally adverse impact upon the health, safety and welfare of the community; the testimony of the engineer was mere speculation that improper maintenance could have an adverse impact. There is no proof that improper maintenance is highly probable. Accordingly, Appellant has demonstrated entitlement *301 to a special exception, and on this issue we are constrained to reverse the order of the trial court.[3]

The Appeal from the Township Board of Supervisors
The decision of the Board denying Appellant's application contained fifteen separate paragraphs purportedly specifying the defects in the preliminary plan.[4] Section *302 508(2) of the Pennsylvania Municipalities Planning Code (MPC)[5] states that, with respect to a preliminary or final land development application:
When the application is not approved in terms as filed the decision shall specify the defects found in the application and describe the requirements *303 which have not been met and shall, in each case, cite to the provisions of the statute or ordinance relied upon.
53 P.S. §10508(2). It is well-settled that this provision is mandatory, and enumerated defects without citation to *304 the provisions of the statute or ordinance relied upon cannot support a denial of an application. Rosanelli v. Quakertown Borough Council, 43 Pa. Commonwealth Ct. 420, 402 A.2d 1115 (1979). As paragraphs 8 and 11 through 14 of the Board's decision contain no citations to a statute or ordinance, it is clear that these could not form a proper base upon which to deny Appellant's application. Moreover, the Board in its brief concedes that paragraphs 3 and 15 of the decision also fail to satisfy the requirements of Section 508(2). Accordingly, we will confine our review to paragraphs 1, 2, 4 through 7, 9, and 10 of the decision, and address them in order.
Paragraph 1 of the decision based denial of the application on the fact that Appellant had not yet received a special exception from the ZHB and, therefore, the application failed to comply with Section 601-1 of the Easttown Township Subdivision and Land Development Ordinance (Subdivision Ordinance).[6] Essentially, Section 601-1 requires an applicant for land development to comply generally with applicable zoning laws. However, as this Court recently stated:
[N]either the zoning ordinance nor the subdivision regulations specify when a developer must obtain a special exception in relation to the preliminary approval process, and we will not read into the ordinances a requirement that a developer must obtain a special exception before approval of its preliminary plan. *305 Graham v. Zoning Hearing Board of Upper Allen Township, 99 Pa. Commonwealth Ct. 585, 592, 514 A.2d 236, 239-40 (1986). Accordingly, since there is no ordinance requirement that a special exception be obtained as a condition precedent to preliminary plan approval, the Board erred in denying Appellant's application on this ground. Moreover, we have already determined that Appellant is entitled to a special exception.
Appellant next challenges paragraph 2 of the decision, which declared Appellant's plan defective for failure to take "risk" into account in his flood plain calculations as per Section 1503(4) of the zoning ordinance.[7] Here, we must agree with Appellant that because "risk" is not defined in the zoning ordinance, because Section 1503(4) does not specify when "risk" is to be used, and because the Board's decision does not specify the specific standard Appellant breached, paragraph 2 of the decision does not satisfy Section 508(2) of the MPC. See Valley Run, Inc. v. Board of Commissioners of Swatara Township, 21 Pa. Commonwealth Ct. 649, 347 A.2d 517 (1975). Furthermore, subparagraphs (A)-(D) lack ordinance or statutory citations, and likewise cannot be used to deny Appellant's application.
In paragraph 4, the Board purported to describe various defects in Appellant's parking scheme, but did not cite to the specific provisions of the subdivision ordinance *306 and the Township's parking ordinance that Appellant's plan supposedly violated. The Board argues, however, that the exhibits and testimony given at the hearing were sufficient to advise Appellant as to the needed corrective action. This is precisely the sort of argument we recently rejected in Coretsky v. Board of Commissioners of Butler Township, 103 Pa. Commonwealth Ct. 28, 519 A.2d 571 (1987) and, accordingly, paragraph 4 does not satisfy Section 508(2) of the MPC and cannot support the rejection of Appellant's application.
Appellant next contends that the Board erred in paragraph 5, wherein his application was declared defective because he had not yet obtained DER approval to enclose and pipe the stream on the property. Setting aside the fact that Appellant's evidence showed that his application for the permit application was pending with DER, we agree that "it would appear to be more reasonable and consistent with the mandate of Section 508(2) to condition final subdivision approval upon the issuance of this . . . permit rather than to abort the plan at conception." Harrisburg Fore Associates v. Board of Supervisors of Lower Paxton Township, 21 Pa. Commonwealth Ct. 137, 143, 344 A.2d 277, 282 (1975); Valley Run, Inc.; see also Traymore Associates v. Board of Supervisors of Northampton Township, 24 Pa. Commonwealth Ct. 564, 357 A.2d 729 (1976).
Paragraphs 6, 7 and 10 of the Board's decision all specify as defects the lack of certain construction details in the Appellant's preliminary plan. However, the sections of the subdivision ordinance cited by the Board in these paragraphs do not require the types of details that the Board asserts are missing. Thus, rejection of the preliminary plan on these bases was improper.
Likewise, paragraph 9 of the decision does not support denial of preliminary approval. The Board ruled *307 that the detention of the stone beds in Appellant's drainage system was not "acceptable." Nothing in this paragraph or the cited ordinance provision, however, explains why it is unacceptable. Paragraph 9 of the decision thus does not comply with Section 508(2) of the MPC.
Reversed.

ORDER
Now, October 16, 1987, the order of the Court of Common Pleas of Chester County, No. 85-01127 dated May 8, 1986, is reversed. The order of the Court of Common Pleas of Chester County, No. 85-01832 dated May 8, 1986, is reversed.
NOTES
[1] Although termed "special relief" by the Zoning Ordinance, it is undisputed that this is synonymous with the term "special exception."
[2] In a zoning case, where the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the zoning board committed a manifest abuse of discretion or an error of law. The zoning board abuses its discretion when its findings of fact are unsupported by substantial evidence. Valley View Civic Association v. Zoning Board of Adjustment, 501 Pa. 550, 462 A.2d 637 (1983). Similarly, in an appeal from a decision of a local governing body, where the trial court takes no additional evidence, our scope of review is limited to determining whether the local governing body abused its discretion or committed an error of law. Borough of Franklin Park v. Atlas Development Co., 91 Pa. Commonwealth Ct. 417, 497 A.2d 675 (1985).
[3] Because of our disposition of this case, we need not and do not decide whether DER has exclusive jurisdiction over Appellant's proposed stream enclosure. Cf. Municipality of Monroeville v. Chambers Development Corp., 88 Pa. Commonwealth Ct. 603, 491 A.2d 307 (1985) (DER has exclusive jurisdiction over operations of sanitary landfills).
[4] The decision of the Board reads in full:

1. The Zoning Hearing Board by Order dated January 24, 1985 has denied applicant's request for special relief under §1504 of the Zoning Ordinance and the application therefor is not in conformity with §601-1 of the Subdivision Ordinance.
2. The flood plain calculations have been revised. However, applicant has still not taken risk factor into account, as required in ordinance 171-81, section 1503-4. The plan proposes to construct inflow and outflow structures right to the property line, which leaves no margin for error, and, creates a reasonable likelihood of damage to upstream and downstream properties for the following reasons: (Sub. Ord. Article VI, Section 601-2)
A. The inflow structure as designed will clog up frequently due to accumulation of debris (tree limbs, leaeves [sic], etc.) This blockage will result in excess backup on the upstream property, and overflow over the head-wall resulting in uncontrolled runoff with higher velocities.
B. Rip-rap stilling basin, as designed at the outlet of the pipe will fill up with debris carried by stream, and if not cleaned frequently, will result in increased velocities, which can cause damage to downstream properties.
C. In normal flow, the runoff discharge through the stilling basin will spread over wider downstream land than at present, which is not permitted.
D. Damage to property due to the proposed construction is likely even with frequent maintenance of inflow and outflow structures.
3. The plan does not comply with section 1605 of Zoning and Article VI, section 601-1 of the Subdivision Ordinance.
4. The parking lot circulation is too restricted for the perpendicular parking scheme as proposed. The parking, as shown, may require people to back out onto Lakeside Avenue, which creates a dangerous condition. Also, because of the narrow driveway, some of the parked cars will lack side protection from cars backing out of designated spaces. Due to the close proximity of northern ingress to the section of route 30, the proposed site should be serviced with one access located as close to the southern property line as possible. (Sub. Ordinance, Article VI, Section 621 and Driveway Ord. No. 112).
5. No evidence of approval from DER to enclose the stream has been obtained or permitted. (Sub. Ordinance Article VI, Section 625-6 and Zoning, Article XV, Section 1504).
6. The plan does not show the sanitary sewer crossing in the profile. Proper concrete encasement for sewer lateral should be provided (Sub. Ordinance, Article VI, Section 623).
7. Invert elevantion [sic] of all outlet pipes from the seepage pits and detention basin should be shown on the plan. (Sub. Ord. Article VI, Section 625 and 626).
8. Top elevation of northern wall and existing flood plain elevation on sheet 2 of 2 should be revised to match the numbers as shown in the narrative report.
9. Based upon the outlet pipe information from the seepage bed, as shown on profiles, the effective detention in the stone beds has been reduced, and it is not acceptable. The plan should be revised to provide the required detention as computed, and shown in the narrative report. (Sub. Ord. Article VI, Section 625, 626).
10. It is indicated on the plan that all connections to 58" x 36" BCCGMPA to be watertight; however, plan fails to set forth the details, type of connection and specification for watertight joints. The method for making P.V.C. pipe connection to 58" x 36" BCCGMPA pipe watertight should be shown on the plan. Further proof that the runoff from seepage bed can be discharged into pipe (58" x 36" BCCGMPA) when flowing full should be submitted. (Sub. Ord. Article VI, Section 625, 626).
11. There is still a question as to the practicality of storm water (seepage bed and detention basin) design. In the opinion of the township engineer, it is not feasible to build these seepage pits and basins (which are located less than one foot above the ground water) without perching the ground water.
12. The method by which the applicant proposes to build retaining wall along the southern property line without encroaching onto the adjacent property has not been adequately answered. In the Opinion of the township engineer, a construction easement will be necessary to construct the proposed retaining wall.
13. Insufficient information with respect to the construction of building and grading along the western property line has been provided. Proper information and details are necessary to properly determine if the proposed construction can be accomplished without encroaching onto adjacent properties.
14. Paving design criteria should be submitted for review.
15. As designed, the property is being overly developed, and does not comply with section 1606-1G of the Zoning Ordinance and Sub. Ord. Article VI, Section 601-2.
[5] Act of July 31, 1968, P.L. 805, as amended, 53 P.S. § 10508(2).
[6] Easttown Township, Pa., Subdivision and Land Development Ordinance §601-1 (1973) states:

All proposed subdivisions and land development shall comply fully with the existing zoning regulations applicable to the land, and no parcel of land shall be created, either by inclusion or exclusion from a proposed subdivision, which cannot be properly utilized for a permitted use under the existing zoning regulations.
[7] Easttown Township, Pa., Zoning Ordinance §1503(4) (1981), provides in pertinent part:

If a formula is used to determine the design flood, it should include all or some of the following factors:
(a) Risk.
(b) Development or urbanization factor.
(c) Undeveloped area or woods factor.
(d) Limestone factor (negative or reducing factor).
(e) Other factors peculiar to the site.
. . . .