**McGRATH CONSTRUCTION, INC. d/b/a McGrath Homes, Appellant**

v.

**UPPER SAUCON TOWNSHIP BOARD OF SUPERVISORS and Locust Valley Gold Club, Inc.**

**McGrath Construction, Inc. d/b/a McGrath Homes, Appellants**

v.

**Upper Saucon Township Board of Supervisors and Locust Valley Gold Club, Inc.**

Commonwealth Court of Pennsylvania.

Argued April 7, 2008.

Decided June 11, 2008.

Reargument Denied Aug. 7, 2008.

Thomas R. Hecker, Langhorne, for appellant.

Thomas H. Dinkelacker, Orefield, for appellee, Upper Saucon Township Board of Supervisors.

William J. Fries, Allentown, for appellee, Locust Valley Gold Club, Inc.

BEFORE: LEADBETTER, President Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Senior Judge McCLOSKEY.

McGrath Homes Construction, Inc., d/b/a McGrath Homes (Appellant), appeals from two orders of the Court of Common Pleas of Lehigh County (the trial court), dated June 21, 2007, and July 13, 2007, which denied Appellant's land use appeal and denied Appellant's motion to open and supplement the record. Also before the Court is a motion to quash the appeal of the trial court's order, dated July 13, 2007. We now deny the motion to quash and affirm the trial court's orders.

Appellant is a real estate development company. Appellant is the equitable owner of adjoining tracts of land known as the Locust Valley Golf Course, located in Upper Saucon Township, Lehigh County, and Springfield Township, Bucks County, Pennsylvania (the Property).

On or about September 13, 2005, Appellant submitted a preliminary plan to Upper Saucon Township (the Township) seeking approval from the Township's Board of Supervisor's (the Board) of a development known as "Locust Valley Singles" (the Plan). The Plan proposed the subdivision of a 135.5 acre tract known as the Locust Valley Golf Course into approximately 124 single-family residential dwelling lots.

The proposed development is located in an existing service area (ESA) that requires the development to be serviced by sewage lines running through the Borough of Coopersburg pursuant to the Upper Saucon Township Act 537 Plan (the Act 537 Plan), the Township's official sewage facilities plan[1]. However, since February 1996, as a result of hydraulic overloading and pursuant to applicable DEP regulations, a moratorium was imposed on any sewer connections in this area.[2] The Township prohibited any further development that discharges sewage into Coopersburg and within the Borough of Coopersburg. Therefore, although the Act 537 Plan required all sewer hook-ups in the ESA to hook into the Coopersburg interceptor, the Township-imposed moratorium prohibited any hook-ups to that interceptor.

The Plan is premised on municipal sanitary sewer, which, under the Township's Subdivision and Land Development Ordinance (SALDO), requires the issuance of a certification of available capacity. In addition, the sewer proposal for the Plan requires an amendment to the Act 537 Plan. Appellant made a formal request to the Board for a special study to provide information to support a proposed revision of the Act 537 Plan, which would allow for the re-routing of the sewer line to interceptor lines serving an area of the Town-

---

1. The Pennsylvania Sewage Facilities Act (the Sewage Facilities Act), Act of January 24, 1966, (1965) P.L. 1535, *as amended*, 35 §§ P.S. 750.1–750.20a, was enacted "to ensure public health, safety and welfare of the citizens by providing for a technically competent, integrated and coordinated system of sanitary sewage disposal." Section 3 of the Sewage Facilities Act, 35 P.S. § 750.3. The Sewage Facilities Act, in part, requires every municipality to adopt an official plan subject to approval by the Department of Environmental Protection (DEP). Section 5 of the Sewage Facilities Act, 35 P.S. § 750.5. The Sewage Facilities Act also provides that an individual may make a private request to DEP to issue an order directing a change to a municipality's official plan. *Id.* Specifically, Section 5(b) of the Sewage Facilities Act establishes that an equitable property owner in a municipality may file a private request with DEP requesting DEP to order the municipality to revise its official plan if the equitable property owner can show that the official plan is not being implemented or is inade-

quate to meet the property owner's sewage disposals needs. 35 P.S. § 750.5(b). DEP's decision is appealable to the Environmental Hearing Board (EHB) for an evidentiary hearing and issuance of findings of fact and conclusions of law. Section 16 of the Sewage Facilities Act, 35 P.S. § 750.16. The decision of the EHB is appealable to the Commonwealth Court. The Sewage Facilities Act is often referred to as Act 537.

2. The sewer collection system is owned by the Upper Saucon Township Municipal Authority (USTMA) and operated by the Township pursuant to a lease. The sewer conveyance system enters a treatment plant owned by the Upper Saucon Sewage Treatment Authority (USSTA) and operated by the Township pursuant to a lease. The prohibition was enacted by the USTMA and USSTA pursuant to DEP regulations as a result of peak hydraulic overloading within the Borough of Coopersburg occurring during wet weather due to infiltration and inflow (leakage into the line).

ship not affected by the moratorium. The proposed re-routing of the sewer line would require a pressurized system and construction of a pump station. The Board authorized the Township's Sewer Engineer to conduct a special study (the Special Study). The Special Study was issued on July 27, 2006. The Township's Sewer Engineer ultimately opposed an amendment to the Act 537 Plan.

On August 1, 2006, three (3) days after the issuance of the Special Study, the Township's Planning Commission (the Planning Commission) reviewed the Plan at a public meeting, and recommended that the Plan be denied due to the lack of municipal sanitary sewer service. The Planning Commission also recommended that the Plan be denied due to the failure of certain lots to comply with lot area or configuration requirements of the Township's SALDO. (Appellant was seeking waivers for those lot area and configuration requirements.)

The Board contends that the Planning Commission requested additional time from Appellant to allow Appellant to remedy many of the Plan defects and to await formal action by it on the Special Study. However, Appellant denied the Planning Commission's request for an extension of time. As a result, the Planning Commission was required to vote on the Plan.

By correspondence dated August 16, 2006, Appellant requested that the Board refrain from considering the Plan until a hearing on the Special Study was conducted and until Appellant had an opportunity to revise the Plan to address remaining review comments. Despite Appellant's request, the Board proceeded with its consideration of the Plan at a meeting on August 22, 2006. Appellant's counsel sent a letter to the Township Manager, dated August 22, 2006, reiterating that Appellant's request that the matter not be scheduled for consideration until Appellant had an opportunity to review the Special Study and to submit a revised Plan to address any remaining outstanding items in various municipal review letters. (R.R. 42a–43a).

Appellant appeared, through counsel, at the Board's meeting on August 22, 2006, and it advised the Township that it would comply with each of the comments in the review letters. Also, in the event that Appellant's two (2) waiver requests were denied, it would comply with the ordinance provisions involved.

At the meeting on August 22, 2006, the Board voted to deny the Plan. The reasons for the denial were set forth in Resolution No. 2006–39 (the Resolution), which denied approval of the Plan based on three (3) purported factors. Those factors were: (1) the decision of the Board to take no action with respect to amending the Act 537 Plan; (2) engineering comments submitted by the USTMA based upon the results of the Special Study; and (3) engineering comments from the Township's engineer. Additional reasons for denial were also noted. Some of those reasons, included, but were not limited to: failure to locate and depict on the Plan existing sewer laterals serving existing structures; problems with some lots not meeting minimum lot area or configuration requirements; storm water management issues; traffic issues; and requirements for sidewalks. The Resolution stated that some of those items identified as additional reasons for denial typically would be characterized as conditions of approval. The Resolution also denied the requested waivers. By letter dated August 29, 2006, the Board officially denied Appellant's request to amend the Act 537 Plan.

Appellant filed a land use appeal with the trial court as to the Board's denial of

preliminary approval.[3] On October 10, 2006, Appellant also filed a motion with the trial court to present additional evidence, seeking to permit Appellant to demonstrate the inaccuracy of the Special Study and the nature of the minor modifications that would be necessary in order for the Plan to fully comply with all applicable provisions of the Township's SALDO. Appellant also sought to provide expert evidence that hooking into the existing collection system would not result in hydraulic overload of the sewer lines. The trial court dismissed the motion without prejudice and denied a subsequent motion for reconsideration. On October 19, 2006, the record owner of the Property, Locust Valley Golf Club, Inc. (Owner),[4] filed a notice of intervention. On or about December 29, 2006, Appellant filed a private request with DEP to amend the Act 537 Plan. By order dated June 15, 2007, DEP ordered the Township to revise its Act 537 Plan and to submit to DEP for review and approval a corrective action plan, which must include "actions necessary to accommodate public sewer service for the Locust Valley Development." (R.R. at 147a–155a).

Five (5) days later, by order dated June 20, 2007, the trial court affirmed the Board's denial of the Plan. In rendering its decision, the trial court considered whether the Board was required to approve the Plan conditioned upon Appellant securing an amendment to the Township's Act 537 Plan.

The trial court concluded that "the Plan's failure to comply with the Township's Act 537 Plan, lack of documentation to support that the [USTMA] can adequately provide sewage disposal and the failure to depict existing sewer laterals servicing existing structures are fundamental defects in the Plan." (Trial court opinion at 9, attached to Appellant's brief). Hence, the Plan failed to comply with the substantive requirements of the subdivision ordinance, and the Board did not abuse its discretion in denying the Plan instead of granting approval of the Plan subject to conditions, including DEP's granting of Appellant's private request to revise the Township's Act 537 Plan.

On June 28, 2007, Appellant filed a motion for reconsideration and a motion to open and supplement the record to include DEP's order, dated June 15, 2007, directing the Township to amend its Act 537 Plan. The trial court denied both motions.

Appellant then appealed to this Court the trial court's order, dated June 20, 2007, denying its land use appeal. (This appeal was docketed as 1358 C.D.2007). Appellant also appealed the orders of the trial court denying the motion to open and supplement the record (docketed as 1523 C.D. 2007) and denying the motion for reconsideration (docketed as 1522 C.D.2007). The latter was quashed sua sponte by this Court. Additionally, the Board filed with this Court a motion to quash the appeal of the trial court's order denying the motion to open and supplement the record. By order dated November 7, 2007, this Court directed that the issue be considered with the merits of the appeal. Also, the appeal

3. Contemporaneously, Appellant filed a timely request for a hearing before the Board to challenge the results of the Special Study, the process used to adopt the Special Study and the Board's denial of the request to revise the Act 537 Plan. By letter dated October 10, 2006, the Board denied Appellant's request. Appellant then filed with the trial court a

petition for review of the Township's denial of a hearing, docketed at 2006–C–3596.

4. The parties refer to the Owner as "Locust Valley Golf Club, Inc.," although the caption of the matter before the trial court and the notices of appeal to this Court refer to the Owner as "Locust Valley Gold Club, Inc."

of the land use denial and the denial of the motion to open and supplement the record are consolidated on appeal to this Court.

On appeal,[5] Appellant raises numerous arguments. First, Appellant argues that the trial court erred in failing to sustain its land use appeal when the Board committed an error of law and/or abuse of discretion in denying preliminary plan approval rather than granting approval of the Plan conditioned on Appellant providing sewer service for the proposed development. Second, Appellant argues that the trial court committed an error of law and/or abuse of discretion in affirming the denial of preliminary plan approval where all of the items cited as the basis for denial of plan approval were items that Appellant had explicitly agreed to comply with, including its two waiver requests, as conditions of preliminary plan approval, and where said items, under standard municipal practice, should be characterized as conditions of approval. Third, Appellant argues that the trial court committed an error of law and/or abuse of discretion in denying Appellant's request for a hearing to present additional evidence in support of its land use appeal in order to demonstrate the inaccuracy of the Special Study and to demonstrate the nature of the minor modifications that would be required in order for the Plan to fully comply with all of the applicable provisions of the Township's SALDO. Fourth, Appellant argues that the trial court committed an error of law and/or abuse of discretion in denying Appellant's request to open and supplement the trial court's record with the order of DEP, directing the Township to revise its Act 537 Plan in order to accommodate sewer service for the proposed development, where said sewer issue was crucial to the trial court's decision.

Additionally, the Board argues that Appellant's appeal of the trial court's order denying the request to open and supplement the record with the order of DEP should be quashed.

First, we will address the issue of whether this Court should quash the appeal of the trial court's order denying Appellant's request to open and supplement the record to include the order of DEP. The Board takes the position that Appellant's appeal of the trial court's order denying its motion to open the record is neither a final order (since it was filed *after* the entry of the trial court's final order denying the land use appeal) nor a collateral order under Pennsylvania Rules of Appellate Procedure 341[6] and 313.[7] Hence, the Board asserts that the appeal should be quashed. Appellant asserts that

---

5. This Court's scope of review in an appeal from a land use decision where no additional testimony is taken is limited to a determination of whether the trial court abused its discretion, committed an error of law or whether constitutional rights were violated. *Berryman v. Wyoming Borough Zoning Hearing Board,* 884 A.2d 386 (Pa.Cmwlth.2005).

6. Pennsylvania Rule of Appellate Procedure 341 reads in relevant part, as follows:

 A final order is any order that disposes of all claims of all parties; or is expressly defined as a final order by statute; or is entered as a final order pursuant to Subdivision (c) of this of this rule.

7. Pennsylvania Rule of Appellant Procedure 313 reads, as follows:

 (a) General rule. An appeal may be taken as of right from a collateral order of an administrative agency or lower court.
 (b) Definition. A collateral order is an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost.

the order in question must be considered to be a final order; otherwise, there is no forum in which it may be reviewed.

We agree with Appellant that the order denying its motion to open and supplement the record should be treated as a final order for purposes of review. The timing issues in this case are significant. By order dated June 15, 2007, DEP directed the Township to revise its Act 537 Plan. Only five (5) days later, by order dated June 20, 2007, the trial court affirmed the Board's denial of the Plan. On June 28, 2007, Appellant filed its motion to open and supplement the record to include DEP's order. We note that, in theory, the motion to open and supplement the record to include the DEP order could have been filed prior to entry of the trial court's final order denying the land use appeal. However, the time period between the issuance of the two (2) orders was minimal, such that the parties were not afforded much opportunity to place the issue before the trial court. Had Appellant filed the motion before the trial court entered its final order denying the land use appeal, the trial court judge would have been able to rule on the motion either by a separate order issued prior to its final order denying the land use appeal or as part of the final order denying the land use appeal. Under either scenario, the issue would have been reviewable on appeal by this Court.

Here, if the order is not reviewable, then there is no opportunity for this Court to determine whether its issuance was an error of law or an abuse of discretion. As a result of the condensed time period between the two (2) orders, practicality and fairness dictate that the trial court's order denying the motion to open and supplement the record must be treated as ancillary to the final order denying the land use appeal, thereby making it appealable.

Otherwise, there would be no opportunity for this Court to review an issue that, given slightly different timing, would have been reviewable on appeal from the final judgment. Hence, we must deny the Board's motion to quash.

Second, we will address Appellant's argument that the trial court erred in failing to sustain Appellant's land use appeal when the Board committed an error of law and/or abuse of discretion by denying preliminary plan approval rather than granting approval of the Plan conditioned on Appellant providing sewer service for the proposed development.

 A preliminary plan must be approved if it meets all specific, objective requirements under a subdivision and land development ordinance. *CACO Three, Inc. v. Board of Supervisors of Huntington Township*, 845 A.2d 991 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 580 Pa. 707, 860 A.2d 491 (2004). A preliminary plan containing minor defects correctable by amending the preliminary plan must be approved subject to a condition that the minor defects are corrected. *CACO Three*. However, where the preliminary plan fails to comply with the objective, substantive requirements, the governing body may in its discretion either reject the plan outright or grant conditional approval. *CACO Three*. When the preliminary plan is disapproved, the governing body must "specify the defects found in the plan and describe the requirements which have not been met and ... cite to the provisions of the statute or ordinance relied upon." *CACO Three* (citing Section 508(2) of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 333, *as amended*, 53 P.S. § 10508(2)). This Court has stated that "where an outside agency's approval is required for some aspect of development, the governing body should condition final

approval upon obtaining the necessary permit rather than denying." *See Morris v. South Coventry Township Board of Supervisors,* 836 A.2d 1015 (Pa.Cmwlth.2003), *petition for allowance of appeal denied,* 580 Pa. 701, 860 A.2d 126 (2004).

Appellant argues that issues relating to sanitary sewer service should not have been used as a basis to deny preliminary approval. Appellant asserts that it has long been acknowledged by the courts that preliminary plans frequently will not have a final resolution on issues such as sewer. In support of that position, Appellant points to this Court's opinions in *Kohr v. Lower Windsor Township Board of Supervisors,* 910 A.2d 152 (Pa.Cmwlth.2006); *CACO Three;* and *Stein v. Easttown Township Board of Supervisors,* 110 Pa. Cmwlth. 293, 532 A.2d 906 (1987).

In *Stein,* an applicant argued that the township's board of supervisors erred in denying it approval of a preliminary land development plan. The board of supervisors had declared the preliminary plan to be defective because the applicant had not yet obtained approval from the Department of Environmental Resources (DER) to enclose and pipe a stream on the property. This Court held that the denial of the preliminary plan based upon the need for DER approval was inappropriate, and that the Board should have granted preliminary approval conditioned on the applicant obtaining the necessary approval from DER.

This Court reached a similar conclusion in *CACO Three.* In that case, a township ordinance required that a mobile home park sewage system be connected to a public system, whenever feasible, and that if a connection to a public system was not feasible, the proposed sewage disposal facilities be approved by DEP prior to construction. The ordinance set forth design standards for a sewage system. The developer submitted its engineer's report regarding the feasibility of sewer connection to the public system, and it also submitted the plan for the proposed sewer and wastewater collection system and obtained a Part I NPDES [8] Permit from DEP for the proposed system. In stating that the plan submitted by the developer did not contain sufficient details for the sewer system, the township's board of supervisors failed to list specific standards which the developer failed to meet, in violation of Section 508(2) of the MPC. This court held that it is more reasonable and consistent with the mandate of Section 508(2) of the MPC to condition final approval of the development plan upon obtaining all the required permits from DEP, rather than rejecting the plan outright. Among the things deferred until final approval were the obtaining of DEP and DOT permits, technical corrections in the storm water management plan and plans for securing a quarry.

In *Kohr,* this Court held that because the sewer planning process is separate from the subdivision process, there is no requirement that the sewer planning process be completed prior to preliminary subdivision plan approval. In *Kohr,* a landowner sought to divide 230 contiguous acres and submitted a sewer and water feasibility report. Although the land-

---

**8.** "NPDES" is an acronym for National Pollutant Discharge Elimination System, a system of federal regulatory controls, pursuant to the Federal Water Pollution Control Act (also known as the federal Clean Water Act), 33 U.S.C. §§ 1251–1376, governing the discharge of pollutants into waters of the United States. A NPDES permit may be issued by the Administrator of the federal Environmental Protection Agency or, since the 1972 amendments to the federal Clean Water Act, may be issued by DEP pursuant to the regulations at 25 Pa.Code §§ 92.1–92.94.

owner indicated an intent to operate a public sewer, the report discussed several other options for sewage disposal, including connecting to a neighboring municipality's existing system and using on lot septic systems. The township engineer did not reject the landowner's plan, but instead required the landowner to submit details of the proposed sewage management program, which it did. Ultimately, after revisions were submitted by the landowner, the township rejected the preliminary subdivision plans. The rejection was based, in part, on deficiencies in the waste water system plans. We held that there is no requirement that the sewer planning process be completed before granting a preliminary approval. We held that the township should have granted preliminary subdivision approval conditioned upon DEP approval of the Act 537 planning module.

In addition to relying upon the cases set forth above, Appellant states that a compelling reason for separating the process of subdivision approval from the sewer planning process is that an amendment to an Act 537 plan may be a lengthy process. Appellant argues that such a lengthy process is at odds with the time constraints found in the MPC. Moreover, a landowner cannot even start the process of submitting a private request for an Act 537 plan until after the municipality has either refused, in writing, to revise its plan or fails to act within sixty (60) days. *See* Section 5(b) of the Sewage Facilities Act, 35 P.S. § 750.5(b). Finally, Appellant cautions that the Board's position would allow a municipality with an inadequate Act 537 plan to deny preliminary plan approval to a developer on the basis of sewer capacity and then subsequently amend its ordinances in order to make them more restrictive relative to the subject property.

The Board counters that the trial court did not abuse its discretion in affirming the Board's denial of the developer's Plan because the Plan violated specific provisions of the Township's SALDO relating to the acquisition of a sewer capacity certification and lot size/area and configuration requirements.

As to sewer capacity, the Board avers that it properly denied the Plan where a certification of sewer capacity was required by the Township's SALDO for preliminary plan approval, and where that certification could not be given based upon the findings of the Special Study. Sections 425.7 and 425.71 of the Township's SALDO read:

425.7 Certification of Sewage Disposal System
425.71 Public. When sewage disposal service to the proposed subdivision is to be provided by an existing public system, the Developer shall submit two (2) copies of a letter from the agency, authority or utility stating that it can adequately serve the subdivision.

The Board argues that throughout the review process, Appellant acknowledges the necessity for a legislative change to the Act 537 Plan as a result of its request to re-route the sewer line and construct a pump station. When the results of the Special Study were adopted, it was clear that Appellant could not receive the certification of sewer capacity or expect a change in the Act 537 Plan. Under those circumstances, the Board contends it did not abuse its discretion or commit an error of law in finding that there existed multiple, substantive defects in the Plan requiring denial. The Board argues that *Stein* supports its position, because it stands for the proposition that when a preliminary subdivision plans fails to comply with the substantive requirements of the subdivision ordinance, its rejection or conditional

approval is within the discretion of the governing body.

The Board contends that the present appeal is further distinguishable from cases involving outside agency approvals or permits because it involves the merits of the Special Study and the refusal of the Board to amend the Act 537 Plan. Both issues involve factual and regulatory considerations to be decided by the EHB in an adversarial proceeding, a process far beyond that of mere permitting by an outside agency.

■ We must agree with the trial court that it was within the discretion of the Board to deny the Plan. The trial court, in reaching that conclusion, aptly distinguished the present case from *Kohr, Stein* and *CACO Three, Inc.*, because those cases involved the application of preliminary plans where compliance with other non-subdivision requirements remained outstanding, which it viewed as being substantially different from "a request to an agency to change the township's approved sewer plan contrary to an existing ordinance of the Township." (Trial court opinion at 9, attached to Appellant's brief).

This is not a situation where an applicant must simply comply with established requirements of an outside agency and await the issuance of a permit or other approval. Rather, in order to meet the requirements for subdivision and development, the Appellant in this case must meet certain substantive requirements, including providing a certification of sewer capacity. However, a sewer prohibition is in effect in the ESA, and existing sewer capacity simply does not exist at this time. In order to obtain a certification of sewer capacity, Appellant must engage in an adversarial process against the Township. As the trial court explained, Appellant must pursue a private request from DEP to revise the Township's Act 537 Plan con-

trary to the stance of the Township. That decision may be appealed to the EHB, resulting in a hearing before the EHB. The EHB decision would then be appealable to this Court. The trial court determined, and we agree, that such a lengthy and litigious process is substantially different from a pending permit relating to a non-subdivision requirement. Therefore, the trial court properly determined that the Township's requirements pursuant to the Sewage Facilities Act are substantive requirements.

The trial court properly concluded, as follows:

> The Plan's failure to comply with the Township's Act 537 Plan [and] lack of documentation to support that USTMA can adequately provide sewage disposal ... are fundamental defects in the [P]lan. The Plan fails to comply with the substantive requirements of the subdivision ordinance, and its rejection was therefore within the discretion of the governing body. The findings that the Plan did not comply with the ordinance requirements is supported by the evidence and because of the nature of the defects we find that that Board did not abuse its discretion in denying the Plan instead of granting the Plan conditioned on the approval of the DEP to revise the Township's Act 537 Plan.

(Trial court opinion at 9, attached to Appellant's brief). We further agree that the trial court did not abuse its discretion.

■ Appellant's next argument concerns whether the trial court committed an error of law and/or abuse of discretion in affirming the denial of preliminary plan approval where all of the items cited as the basis for denial of plan approval were items that Appellant had explicitly agreed to comply with as conditions of preliminary plan approval, including its two waiv-

er requests, and where said items, under standard municipal practice, should be characterized as conditions of approval. The trial court properly explained the reasoning for its determination on this issue, as follows:

> [T]he Board did not err in denying the Plan as a whole. Once a preliminary subdivision plan fails to comply with the substantive requirements of the subdivision ordinance, the governing body had the authority to determine whether the plan is rejected or conditionally approved. A fundamental defect in [Appellant's] Plan existed based on the sewer issue. Accordingly, the Board, in its discretion, rejected the Plan, and factors that ordinarily may have warranted conditional approval were listed under the Board's basis for denying the Plan. The Board had the authority to deny the Plan or conditionally approve it and we find no abuse of discretion in the Board's decision to deny the Plan in its entirety.

(Trial court opinion at 12–13). We agree with the trial court's analysis, and we cannot conclude that the Board committed an error of law or abuse of discretion given the Plan's failure to comply with the substantive requirements of the subdivision ordinance relating to sewer.

Finally, we will address Appellant's argument that the trial court committed an error of law and/or abuse of discretion in denying Appellant's request for a hearing to present additional evidence in support of its land use appeal in order to demonstrate the inaccuracy of the Special Study and to demonstrate the nature of the minor modifications that would be required in order for the Plan to fully comply with all of the applicable provisions of the Township's SALDO. We will also address Appellant's argument that the trial court committed an error of law and/or abuse of

discretion in denying Appellant's request to open and supplement the record with the order of DEP, directing the Township to revise its Act 537 Plan in order to accommodate sewer service for the proposed development, where said sewer issue was crucial to the trial court's decision.

■■■■ The MPC provides as follows:

If, upon Motion, it is shown that proper consideration of the Land use Appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence....

Pursuant to 53 P.S. § 11006.A(d), upon motion by any of the parties or upon motion by the court, the judge of the court may hold a hearing or hearings to receive additional evidence or employee experts to aid the court to frame an appropriate order.

Section 1005–A of the MPC, 53 P.S. § 11005–A. A decision as to whether to allow additional evidence to be presented is a matter within the discretion of the trial court. *Crystal Forest Associates, L.P., v. Buckingham Township Supervisors,* 872 A.2d 206 (Pa.Cmwlth.2005), *petition for allowance of appeal denied,* 586 Pa. 760, 895 A.2d 551 (2006). However, a court of common pleas faces compulsion to hear additional evidence in a land use appeal where the party seeking the hearing demonstrates that the record is incomplete because a party was denied an opportunity to be heard fully, or because relevant testimony was offered and excluded. *Allegheny Energy Supply Co., LLC v. Township of Blaine,* 829 A.2d 1254 (Pa.Cmwlth.2003); *Eastern Consolidation and Distribution Services, Inc., v. Board of Commissioners of Hampden Township,* 701 A.2d 621 (Pa.

Cmwlth.1997), *petition for allowance of appeal denied*, 553 Pa. 683, 717 A.2d 535 (1998).

■ Appellant argues that the trial court erred in denying it the right to present additional evidence. Appellant contends that the only way that the land use appeal could receive "proper consideration" was to be allowed to present evidence to controvert the various purported bases for denial of the preliminary plan application. Appellant contends that it was denied the opportunity to demonstrate the inaccuracy of the Special Study and was denied the opportunity to present evidence that compliance with the other requirements used by the Board as reasons for denial would be simple and feasible. Appellant notes that the Board denied the request for waivers and the Plan in the Resolution, which meant that there was virtually no opportunity to revise the Plan in light of the denial of waivers.

The Board counters that the trial court did not abuse its discretion in denying multiple requests by Appellant to consider additional evidence where the evidence was legally irrelevant, and, as to the sewer issues, beyond the jurisdiction of the court to hear.

We must agree with the Board. The Sewer Facilities Act and applicable regulations place the sewer issues within the exclusive jurisdiction of DEP. The trial court was not required to allow Appellant to present additional evidence to dispute the findings of the Special Study. Given that we have concluded that the trial court did not err when it concluded that the Board acted properly in denying the Plan on the basis of the sewer plan alone, the trial court did not have to consider the other issues in reaching its determination. Therefore, the trial court was not required to allow Appellant to present additional evidence on issues that it need not address

to dispose of the matter. Hence, we cannot conclude that the trial court committed an error of law or abused its discretion when it denied Appellant's request to present additional evidence.

■ As to the trial court's denial of Appellant's request to open and supplement the record with the order of DEP, Appellant argues that the trial court erred in denying its request because the DEP order is highly relevant to the matter. The Board notes that DEP's determination is not the final determination on the matter, as the Township has appealed to the EHB for a de novo hearing and there is a possibility of a further appeal to the Commonwealth Court. Furthermore, the Board argues that the request to reopen is contrary to the MPC and standard of review. Additional evidence is required under the MPC where a party is refused the opportunity to be fully heard or relevant testimony is excluded before the Board. Here, the DEP decision was not in existence at the time of the Board review. The "newly obtained" DEP decision is, therefore, outside the scope of the MPC.

Again, we agree with the Board that the trial court was not required to allow Appellant to present evidence of DEP's order. As we have explained, the Board was not required to condition approval of the Plan on the amendment of the Act 537 Plan. Therefore, even if it were ultimately determined that the Township is required to amend its Act 537 Plan, that would not result in a conclusion that the Board acted improperly. The Board was charged with deciding the matter based on the evidence available and presented to it at the time. Moreover, we note that the action taken by DEP on Appellant's private request is not dispositive of the sewer issue, as the matter was appealed to EHB for a de novo hearing, with opportunity for appeal thereafter. Under these circumstances, we can-

not conclude that the trial court committed an error of law or abuse of discretion.

For those reasons, we must affirm the orders of the trial court.

### ORDER

AND NOW, this 11th day of June, 2008, it is hereby ordered that the motion to quash appeal, filed by Upper Saucon Township Board of Supervisors, in the matter docketed as 1523 C.D.2007, is hereby denied. It is further ordered that the orders of the Court of Common Pleas of Lehigh County, dated June 21, 2007, and July 13, 2007, which are the subject of the appeals docketed as 1358 C.D.2007 and 1523 C.D.2007, respectively, are both hereby affirmed.