John J. MIRAVICH and Patricia J. Miravich, Sue Davis–Haas, Richard H. Haas, Ida C. Smith, Zildia Perez, Leon Perez, Donna Galczynski, Kevin Galczynski, Alan Ganas, Renee Froelich and Scott Matthews, Appellants,

v.

TOWNSHIP OF EXETER, BERKS COUNTY, Pennsylvania and Metrodev V, LP.

Commonwealth Court of Pennsylvania.

Argued June 4, 2012.

Decided Sept. 7, 2012.

Reargument Denied Nov. 1, 2012.

Osmer S. Deming, Reading, and John J. Miravich, Exton, for appellants.

John J. Mahoney, Chester Springs, for appellee Township of Exeter, and Michael A. Setley, Wyomissing, for appellee, Metrodev V, LP.

BEFORE: LEADBETTER, Judge, and COVEY, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

John J. and Patricia J. Miravich, Sue Davis–Haas, Richard H. Haas, Ida C. Smith, Zildia and Leon Perez, Donna and Kevin Galczynski, Alan Ganas, Renee Froelich, and Scott Matthews (Protestants) appeal from the September 12, 2011, order of the Court of Common Pleas of Berks County (trial court) denying their land use appeal. We affirm in part, re- verse in part and remand for reconsideration in light of this opinion.

Protestants are owners of properties adjacent to the proposed residential development of Metrodev V, LP (Landowner). The subject property is approximately 47.294 acres (Property) in an area where the boundary lines of the Township of Exeter, Berks County, Pennsylvania (Township) and two surrounding municipalities, Lower Alsace Township and Alsace Township, meet.

Prior to July 25, 2005, the Township's Zoning Ordinance No. 500 (Old Ordinance) was in effect. Under the Old Ordinance, the Property was zoned "Low Density Residential." On July 25, 2005, the Township[1] enacted Zoning Ordinance No. 596 (New Ordinance), which changed the zoning classification of the Property from low-density residential to suburban residential. The changed classification had the practical effect of reducing the number of residential lots permitted on the Property from thirty to seven.

On August 24, 2005, Landowner filed a challenge to the validity of the New Ordinance with the Township's Zoning Hearing Board (ZHB) pursuant to former section 909.1(a)(2) of the Pennsylvania Municipalities Planning Code (MPC),[2] alleging procedural irregularities in the adoption of that ordinance. On September 2, 2005, the proposed developer of the Property, Metropolitan Development Group (Developer), submitted a preliminary subdivision plan (Plan) to construct a residential development on the Property called "Windy Willows," comprised of thirty-four residential lots, twenty-six of which are located within

---

1. Pursuant to Section 601 of The Second Class Township Code, Act of May 1, 1933, P.L. 103, *as amended*, 53 P.S. § 65601, the Township is governed and supervised by a board of supervisors.

2. Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10909.1(a)(2), deleted by the Act of July 4, 2008, P.L. 319.

the Township.[3] The Plan was based upon a "sketch plan" that Developer previously submitted while the Old Ordinance was still in effect. Developer also sought waivers from the Township's Subdivision and Land Development Ordinance No. 550 (SALDO).

On September 26, 2005, the Township and Landowner entered into an "Agreement to Settle Litigation" (Settlement Agreement), whereby Landowner agreed to withdraw its procedural challenge to the New Ordinance in exchange for the Township's agreement to review and potentially approve the Plan in accordance with the terms of the Old Ordinance. (Settlement Agreement at 1–2; R.R. 188a–89a.)

On July 14, 2008, the Township approved the Plan, subject to certain conditions. The Township also granted waivers from certain sections of the SALDO, but expressly reserved its determination of other waiver requests until the final plan approval stage. Pursuant to the terms of the Settlement Agreement, the Township reviewed the Plan under the provisions of the Old Ordinance.

On August 13, 2008, Protestants filed a land use appeal with the trial court and, in response, Landowner intervened. The parties filed briefs and, nearly a year later, the Township filed a motion to dismiss the appeal, arguing that Protestants lacked standing to file the appeal for failure to appear in the proceedings below. The trial court granted the Township's motion and dismissed Protestants' appeal. (Tr. Ct. Op., 11/30/09, at 5.)

On appeal to this court, we ruled that Protestants, as adjacent landowners, had substantive standing to object to subdivision plans both before the Township and in land use appeals, even though they had not appeared before the Township or the Township's Planning Commission. *Miravich v. Township of Exeter*, 6 A.3d 1076, 1079–80 (Pa.Cmwlth.2010) (*Miravich I*). Comparing and contrasting the procedural requirements for zoning hearing boards and boards of supervisors, we pointed out that, in considering subdivisions and land development proposals, a board of supervisors is not required to hold public hearings. *Id.* at 1079. Mindful of that difference and noting that the Township did not voluntarily follow the procedures required of the ZHB to provide notice and a hearing on the record with a clear procedure for entering an appearance, we held that the only applicable standing requirement was substantive, *i.e.*, whether Protestants were "persons aggrieved." *Id.* Concluding that Protestants had substantive standing, this court reversed the trial court's order and remanded for further proceedings. *Id.* at 1080.

■ On remand, the trial court again denied Protestants' land use appeal. The trial court determined that the Township did not err or abuse its discretion by reviewing the Plan under the Old Ordinance based upon the terms of the Settlement Agreement because municipalities are legally authorized to settle challenges to zoning ordinances. (Tr. Ct. Op., 9/12/11, at 4–5.) The trial court further determined that: (1) the Township did not err or abuse its discretion by conditioning final approval, as opposed to preliminary approval, upon sewage certification, (*id.* at 6); (2) Developer, acting as the "agent" for Landowner, had standing to submit the Plan, (*id.* at 6–7); (3) the Township did not err or abuse its discretion in granting the waivers from the SALDO because section

---

**3.** Two lots are located within Lower Alsace Township; six lots are located within Alsace Township. (Tr. Ct. Op., 9/12/11, at 2.)

512.1 of the MPC, 53 P.S. § 10512.1, vests discretion within the governing body to grant waiver requests and such discretion was not abused, (*id.* at 9); and (4) the Township's decision to reserve judgment on two of the waiver requests until the final plan stage did not amount to a denial of those requests, (*id.* at 10). From this decision, Protestants filed the instant appeal.[4]

I. *Settlement Agreement and Application of New Ordinance*

 First, Protestants contend that the proper procedure to challenge the New Ordinance was to have a hearing before the ZHB.[5] We agree.

At the time Landowner filed its challenge, section 909.1 of the MPC, 53 P.S. § 10909.1, provided that the zoning hearing board had exclusive jurisdiction over validity challenges. Specifically, section 909.1 of the MPC provided, in relevant part:

(a) The zoning hearing board *shall have exclusive jurisdiction* to hear and render final adjudications in the following matters:

(1) Substantive challenges to the validity of any land use ordinance, *except* those brought before the governing body pursuant to sections 609.1 and 916.1(a)(2).

(2) Challenges to the validity of a land use ordinance raising *procedural questions or alleged defects in the process of enactment or adoption* which challenges shall be raised by an appeal taken within 30 days after the effective date of said ordinance.[6]

53 P.S. § 10909.1 (emphases added). The exceptions to the zoning hearing board's exclusive jurisdiction are limited to substantive challenges brought before the governing body. Sections 609.1[7] and 916.1(a)(2)[8] of the MPC.

---

4. Where the trial court takes no additional evidence, our scope of review in a land use appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion. *Zajdel v. Board of Supervisors*, 925 A.2d 215, 218–19 n. 6 (Pa.Cmwlth.2007). A governing body abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.*

5. The Township contends that not a single issue has been preserved for appellate review because Protestants did not raise the issues before the Township. As we recognized in *Miravich I*, the Township did not provide notice and a hearing. Therefore, we do not believe the issues have been waived for failure to raise them before the Township. Moreover, the issues have been raised in Protestants' land use appeal. (Protestants' Land Use Appeal, 8/13/2008, at 3–5; R.R. 5a–7a.)

6. Section 909.1(a)(2) was deleted by the Act of July 4, 2008, P.L. 319, effective immediately.

7. Added by the Act of June 1, 1972, P.L. 333, *as amended*, 53 P.S. § 10609.1. This section provides, in relevant part:

A landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in section 916.1 [53 P.S. § 10916.1]. The governing body shall commence a hearing thereon within 60 days of the request as provided in section 916.1. The curative amendment and challenge shall be referred to the planning agency or agencies as provided in section 609 [53 P.S. § 10609] and notice of the hearing thereon shall be given as provided in section 610 [53 P.S. § 10610] and in section 916.1.
53 P.S. § 10609.1(a).

8. Added by the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10916.1(a)(2). This section provides:

(a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof

Section 916.1(d) of the MPC, 53 P.S. § 10916.1(d), provides that the zoning hearing board shall conduct a public hearing within sixty days after a challenge is filed. Section 916.1(e) of the MPC further provides:

Public notice of the hearing shall include notice that the validity of the ordinance or map is in question and shall give the place where and the times when a copy of the request, including any plans, explanatory material or proposed amendments may be examined by the public.

53 P.S. § 10916.1(e).

Here, on August 24, 2005, Landowner filed a challenge to the validity of the New Ordinance with the ZHB on procedural grounds.[9] The parties do not dispute that the enactment process for the New Ordinance was procedurally defective. (Tr. Ct. Op., 9/12/11, at 5.) Although Landowner requested a hearing before the ZHB within sixty days, a hearing was never held because the Township and Landowner entered into a Settlement Agreement. In the Settlement Agreement, the Township and Landowner agreed "to preserve the validity" of the New Ordinance. (Settlement Agreement, 9/26/05, at 1; R.R. at 188a.) Landowner agreed to withdraw its challenge and, in exchange, the Township agreed to review the Plan under the Old Ordinance. (*Id.*)

The Township lacked authority to determine which zoning ordinance would be applied to the Plan. First, Landowner's procedural challenge fell within the exclusive jurisdiction of the ZHB, not the Township. Section 909.1(a)(2) of the MPC, 53 P.S.

§ 10909.1(a)(2). Second, Landowner filed its challenge with the ZHB and did not bring the matter before the Township pursuant to sections 609.1 or 916.1(a)(2) of the MPC. Third, even if Landowner had filed its challenge with the Township, the Township was required to hold a hearing within sixty days of the request and provide notice of the hearing. Section 609.1 of the MPC, 53 P.S. § 10609.1. By entering into the Settlement Agreement with Landowner and agreeing that the Old Ordinance would apply to the Plan, the Township completely usurped the role of the ZHB and violated the hearing and notice provisions of the MPC.

▐ Next, Protestants contend that the Settlement Agreement was an invalid exercise of the Township's authority to settle the challenge to the New Ordinance. We agree.

In support of their position, Protestants rely upon *Carlino v. Whitpain Investors,* 499 Pa. 498, 453 A.2d 1385 (1982). Therein, our Supreme Court held that "[t]he police power of municipalities cannot be subjected to agreements which restrict or condition zoning district classifications as to particular properties." *Id.* at 504, 453 A.2d at 1388. " 'Contracts ... have no place in a zoning plan and a contract between a municipality and a property owner should not enter into the enactment or enforcement of zoning regulations.' " *Id.* (citation omitted). The Court continued:

"Zoning is an exercise of the police power to serve the common good and general welfare. It is elementary that the legislative function may not be surren-

---

which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:

\*　　\*　　\*

(2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.

53 P.S. § 10916.1(a)(2).

9. The validity challenge is not part of the certified record.

dered or curtailed by bargain or its exercise controlled by the considerations which enter into the law of contracts. The use restriction must ... have general application. The power may not be exerted to serve private interests merely, nor may the principle be subverted to that end."

Accordingly, we reject the view that agreements, and concomitant representations or stipulations, which induce changes in zoning district classifications[,] limit the effect of those changes once enacted.

*Id.* at 504–505, 453 A.2d at 1388 (citation omitted).

■ Notwithstanding, the courts of this Commonwealth have recognized that settlement agreements are a permissible tool for resolving land use disputes. *See, e.g., Yaracs v. Summit Academy*, 845 A.2d 203 (Pa.Cmwlth.2004); *Boeing Company v. Zoning Hearing Board*, 822 A.2d 153 (Pa. Cmwlth.2003); *Summit Township Taxpayers Association v. Summit Township Board of Supervisors*, 49 Pa.Cmwlth. 459, 411 A.2d 1263 (1980). The rationale is that the law favors settlements. *Summit*, 411 A.2d at 1266. The courts have jurisdiction over the municipality and landowner and therefore may approve settlement agreements. *Id.*

In *BPG Real Estate Investors–Straw Party II, L.P. v. Board of Supervisors*, 990 A.2d 140, 147–48 (Pa.Cmwlth.2010), *appeal denied*, 611 Pa. 628, 23 A.3d 543 (2011), we opined that *Carlino* and other "contract zoning" cases are inapplicable to the settlement of a land use case before a trial court. Citing *Yaracs, Boeing*, and *Summit*, we explained that settlement agreements are a permissible tool for resolving land use disputes. *Id.* at 148. "This holds true even where such an agreement permits a departure from existing zoning ordinance regulations." *Id.*

However, the instant case is readily distinguishable from *Yaracs, Boeing*, and *Summit*. The settlement agreements in *Yaracs, Boeing*, and *Summit*, underwent judicial review and approval. Moreover, judicial approval of the settlements occurred after the procedural safeguards of publication, notice, and hearing. Such was not the case here. The Settlement Agreement was not reviewed by or approved by any court. Because the validity challenge was withdrawn from the ZHB, the Settlement Agreement was reached without public notice or hearing. As a result, there was no opportunity for Protestants to participate and voice their objections to the zoning change encompassed by the Settlement Agreement.

The Settlement Agreement in this case is more akin to the type of contract zoning admonished in *Carlino*. The Settlement Agreement changed the zoning classification for the Property from suburban residential back to low-density residential. The Settlement Agreement enables Landowner to use his Property for low-density residential, yet other property owners in the same zoning classification are prohibited from doing so. Conversely, the settlement agreements in *Yaracs, Boeing*, and *Summit* did not involve zoning reclassifications. *See, e.g., Yaracs* (settlement agreement allowed landowner to expand its legal nonconforming use as a residential juvenile correction facility); *Boeing* (settlement agreement permitted a special exception to operate an adult entertainment facility in an industrial area); *Summit* (settlement agreement allowed landowner to expand its legal nonconforming use as a sanitary landfill). We, therefore, conclude that the Settlement Agreement agreed to by the Township and Landowner is invalid.

■ Next, Protestants contend that the Township erred by applying the Old Ordi-

nance instead of the New Ordinance to the Plan. We agree.

■ Pursuant to section 508(4)(i) of the MPC, 53 P.S. § 10508(4)(i), an application for subdivision approval, whether preliminary or final, is governed by the ordinance in effect at the time the subdivision application was filed. *See Naylor v. Township of Hellam*, 565 Pa. 397, 407 n. 6, 773 A.2d 770, 776 n. 6 (2001). When a zoning ordinance is amended during the subdivision process, section 508(4)(i) of the MPC provides:

> From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. § 10508(4)(i). If a sketch plan is not a mandatory step in a municipality's land development process, the date the applicant submits its preliminary plan is the date that governs which version of a zoning ordinance applies. *See Folino v. Greenwich Township*, 862 A.2d 176, 180 n. 6 (Pa.Cmwlth.2004).

Here, Developer submitted its Plan on September 2, 2005, which followed the adoption of the New Ordinance on July 25, 2005. Although Developer had submitted a sketch plan when the Old Ordinance was still in effect, the Township did not require the sketch plan as part of its land development process. The date Developer submitted its Plan, not its sketch plan, is the operative date for determining the govern-

ing ordinance. We conclude that the Township erred by not reviewing the Plan under the New Ordinance.

## II. *Waivers and Conditions*

■ Next, Protestants contend that the Township's approval of the Plan was defective for (1) failure to require sewage certification at the initial stage; (2) the lack of substantial evidence to support the grant of the SALDO waivers; and (3) having not granted certain waivers.

With regard to the sewage certification issue, Protestants cite *McGrath Construction, Inc. v. Upper Saucon Township Board of Supervisors*, 952 A.2d 718 (Pa. Cmwlth.2008), for the proposition that the Township erred in not requiring the sewage certification at the preliminary stage. In *McGrath*, we opined:

> A preliminary plan must be approved if it meets all specific, objective requirements under a subdivision and land development ordinance. A preliminary plan containing minor defects correctable by amending the preliminary plan must be approved subject to a condition that the minor defects are corrected. However, where the preliminary plan fails to comply with the objective, substantive requirements, the governing body may in its discretion either reject the plan outright or grant conditional approval.... This Court has stated that "where an outside agency's approval is required for some aspect of development, the governing body should condition final approval upon obtaining the necessary permit rather than denying."

*Id.* at 725–726 (internal citations omitted). We held that when a SALDO requires a certification of sewer capacity at the preliminary stage, the supervisors may, in their sound discretion, either reject the

plan or approve it with conditions. *Id.* at 729.

While the board in *McGrath* chose to reject the plan, the Township here granted preliminary approval of the Plan and conditioned final plan approval upon obtaining sewage certification. As the trial court noted, the applicable SALDO provision does not specify the time or stage at which an applicant must obtain and submit sewage certification. (Tr. Ct. Op., 9/12/11, at 6.) Accordingly, the Township had discretion to require that such certification be provided as a condition of final approval, as opposed to preliminary plan approval. *See Stein v. Easttown Township Board of Supervisors,* 110 Pa.Cmwlth. 293, 306, 532 A.2d 906, 912 (1987) (stating that Pennsylvania courts have long held that if additional approvals, permits or conditions need to be met to obtain final approval, the governing body should condition final approval upon obtaining the relevant approval, permit or condition rather than denying preliminary approval of the land development application).

■ With regard to the other waivers and conditions, section 512.1 of the MPC,[10] 53 P.S. § 10512.1, provides, in relevant part:

(a) The governing body or the planning agency, if authorized to approve applications within the subdivision and land development ordinance, may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

(b) All requests for a modification shall be in writing and shall accompany and be a part of the application for develop-

ment. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of the ordinance involved and the minimum modification necessary.

Section 512.1 clearly vests discretion with the Township to grant or deny any and all of the waivers requested in the Plan. The Township granted waivers from sections 4.278 (school bus stop shelter) and 5.514 (lot depth to width ratio for lots 12, 14, and 15) of the SALDO and conditioned waiver from section 5.236 (required widths for lanes) of the SALDO on approval from Alsace Township. (Township's Decision, 7/14/08, at 4.) The Township deferred consideration of two of the waiver requests until the final plan stage. (*Id.*)

The Township did not explain the basis for granting the waivers. The Township merely stated that the conditions imposed are "reasonable, appropriate and necessary to effectuate and implement the purpose of" the Ordinance and SALDO, without further elaboration. (*Id.* at 4.) The Property is located within three municipalities, which is a peculiar condition pertaining to the land. Although one can readily surmise that literal enforcement of the Township's SALDO could exact undue hardship because the three municipalities have different subdivision requirements, the Township failed to explain the nature of the hardship for the waivers granted. Without providing the basis for the waivers, we are unable to determine whether the Township erred or abused its discretion in granting the waivers at the preliminary plan stage. As for the Township's decision to table other waiver requests for final plan approval, we find no error.

### III. *Standing*

■ Finally, Protestants contend that Developer lacked standing to seek prelimi-

---

**10.** Added by the Act of December 21, 1988, P.L. 1329.

nary plan approval because there is no evidence in the record before the municipality that Developer has an equitable interest in the Property or is an agent for Landowner. We disagree.

Section 107 of the MPC, 53 P.S. § 10107, defines "[a]pplicant" as "a landowner or developer, as hereinafter defined, who has filed an application for development including his heirs, successors, and assigns." "Developer" is defined as "any landowner, agent of such landowner, or tenant with the permission of such landowner, who makes or causes to be made a subdivision of land or a land development." 53 P.S. § 10107.

Here, Developer, not Landowner, submitted the Plan. The record shows that Developer was authorized to act on Landowner's behalf. The authorization is memorialized in the "Certificate of Ownership and Acknowledgement of Application," which states that the Plan was submitted with the "knowledge and/or direction" of the Property owner. (Cert. of Ownership, 9/1/05, at 1; R.R. 200a.) The document was signed by Brian Kobularick, Vice President of Developer, under oath, and was attached to the Plan for preliminary plan approval. (*Id.*) The Settlement Agreement entered into by Landowner and the Township states that, on September 2, 2005, Landowner presented "a preliminary plan . . . to subdivide its property . . . into residential building lots." (Settlement Agreement, 9/26/05, at 1; R.R. at 188a.) The parties agreed that the Township would review Landowner's Plan under the Old Ordinance. (*Id.*) The Settlement Agreement was signed by Kobularick on behalf of Landowner. (Settlement Agreement, 9/26/05, at 2; R.R. at 189a.) The

appeal petition filed with the ZHB challenging the New Ordinance was also signed by Kobularick on behalf of Landowner. (Appeal Pet., 8/24/05, at 4; R.R. at 244a.) The evidence of record constitutes sufficient evidence that Developer has an equitable interest in the Property or was otherwise acting as an agent of Landowner and therefore had standing to seek preliminary plan approval.[11]

Accordingly, we affirm in part, reverse in part and remand the matter for reconsideration in accordance with the foregoing opinion.

### ORDER

AND NOW, this 7th day of September, 2012, we affirm in part and reverse in part the September 12, 2011, order of the Court of Common Pleas of Berks County, and we remand this matter for proceedings consistent with the foregoing opinion.

Jurisdiction relinquished.

---

11. Moreover, in *Miravich I*, Landowner asserted that Developer was acting as its agent in filing the application. 6 A.3d at 1077 n. 2.

Although Protestants disputed this assertion, we did not address the issue. *Id.*