IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Concerned Citizens of         :
Ross Township,                    :
        Appellant        :
                                  :
    v.                            :   No. 1301 C.D. 2020
                                  :
Ross Township and The Catholic    :
Cemeteries Association of the     :
Diocese of Pittsburgh, Inc.       :   Submitted: June 24, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge
               HONORABLE LORI A. DUMAS, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE CEISLER                    FILED: September 13, 2022

Appellant The Concerned Citizens of Ross Township (Concerned Citizens) appeals from the Court of Common Pleas of Allegheny County's (Common Pleas) November 19, 2020 order, through which Common Pleas affirmed the Board of Commissioners of the Township of Ross' (Board) March 30, 2020 decision (Decision). In that decision, the Board granted Appellee The Catholic Cemeteries Association of the Diocese of Pittsburgh, Inc.'s (Catholic Cemeteries) request for a modification or waiver of the steep slope regulations contained in Ross Township's Grading Ordinance[1] and, in addition, gave conditional and final approval of Catholic Cemeteries' land development plan for the affected property. After thorough review, we reverse.

---

[1] Ross Township Grading Ordinance, Allegheny County, Pa. (2007).

# I. Background

Catholic Cemeteries owns a 104.73-acre property (Property), located at 204 Cemetery Lane in Ross Township (Township), upon which it operates the North Side Catholic Cemetery. Reproduced Record (R.R.) at 1366a-71a, 1380a-81a. Originally, the Property consisted of two parcels, known as 217-M-65, and 218-A-100, which collectively encompassed 88.73 acres of land. *See id.* at 1380a-81a; Decision, Findings of Fact (F.F.) ¶2. However, several steps were taken in 2019 that resulted in the Property's expansion to its current size. First, the Township approved the subdivision of an adjacent parcel owned by AMFM Broadcasting, known as 218-G-90, which created multiple smaller parcels, including a 16-acre lot called 218-B-2. R.R. at 1364a-65a, 1380a-81a, 1505a-06a; Decision, F.F. ¶3. Contemporaneously, the Township approved the consolidation of Lots 218-A-100 and 218-B-2. R.R. at 1364a-65a, 1380a-81a, 1505a-06a; Decision, F.F. ¶4. AMFM Broadcasting then deeded Parcel 218-B-2 to Mele & Mele & Sons, Inc. (Mele) on September 29, 2019, after which Mele transferred Parcel 218-B-2 to Catholic Cemeteries on October 10, 2019. R.R. at 1366a-71a; Decision, F.F. ¶¶4-5. This final land transfer resulted in the Property being enlarged to its current dimensions.

With ownership of the three aforementioned parcels in hand, Catholic Cemeteries then embarked upon the land development project that eventually gave rise to this appeal. On December 8, 2019, Catholic Cemeteries filed an Application for Site Plan Approval (Application) with the Township. R.R. at 61a-66a, 957a-58a. Through this Application, Catholic Cemeteries informed the Township of its desire to construct additional cemetery plots for the North Side Catholic Cemetery on the Property. This project required significant earth movement and tree clearing, as well as the usage of fill material that was brought in from off-site. *Id.* at 65a. Catholic

Cemeteries, through Tysen Miller, the project's engineering manager, then sent a letter to the Township on December 18, 2019. *Id.* at 70a. Therein, Catholic Cemeteries stated that 28.32 acres of the Property were covered by steep slopes, and that the project called for disturbing 5.43 acres of the Property's potentially landslide-prone sections, equaling 19.1% of the Property's steeply sloped areas, and, more broadly, disturbing 8.62 acres (*i.e.* 30.4%) of those steep slopes. *Id.* As both figures exceeded the amount of steep slope disturbance allowed by Section 9-110.5 of the Grading Ordinance,[2] Catholic Cemeteries asked the Township to modify the

---

[2] Per Section 9-110.5 of the Grading Ordinance:

**A.** The steep slope protections are provided to reduce grading on steep slopes areas within the Township that have not been previously graded. The intent of this provision is to preserve the esthetic, stormwater and environmental benefits provided by steep slopes. The disturbance of land, which shall include the development, grading, and stripping of vegetation thereon, shall be limited to a percentage of the land within steep slope categories established by this section. The applicant proposing the subdivision and/or land development shall prepare a topographic site plan with five-foot contour intervals depicting the slope of all areas within the site according to categories of 0% to 11.9%, 12% to 14.9%, 15% to 25% and greater than 25% prior to grading and as proposed in the topographic site plan. Land that has previously been graded shall be delineated on the plan and shall not be considered in the steep slope calculations.

**B.** Such plan shall be sealed by a professional engineer, professional land surveyor or a landscape architect. The maximum area of land which may be developed, graded and stripped of vegetation shall be as follows:

| Slope | Area Which Could be Disturbed |
|---|---|
| 12 to 14.9% | 40% (30% in a landslide prone area) |

**(Footnote continued on next page…)**

3

applicable restrictions in this instance. *Id.* The Township's Planning Commission reviewed Catholic Cemeteries' submissions and, on January 31, 2020, recommended to the Board that it both grant the desired modification and give conditional final approval to the Application. *Id.* at 72a-73a. On February 12, 2020, Mr. Miller sent a second letter to the Township, in which he reiterated the original modification request and provided additional detail regarding why Catholic Cemeteries needed such dispensation. *Id.* at 69a.[3] On February 18, 2020, the Board

| | |
|---|---|
| 15 to 25% | 30% (20% in a landslide prone area) |
| 25% and above | 15% (5% in a landslide prone area) |

 **C.** The applicant must demonstrate that the area of the proposed development is not within a landslide prone area - failing that, the applicant must demonstrate that measures taken during development and construction will decrease the risk of landslides.

 **D.** Within landslide prone areas, no structures, roads or vehicular use areas shall be located within 20 feet of a slope greater than 30%.

Grading Ordinance § 9-110.5.

[3] In a nutshell, this additional information consisted of conclusory statements regarding Catholic Cemeteries' putative need for a modification, rather than actual substantive evidence or changes to the underlying development plan that had been submitted in December 2019. These assertions merely reiterated some of the requirements imposed by the Township's Subdivision and Land Development Ordinance (SALDO), Ross Township SALDO, *as amended*, Allegheny County, Pa. (1973), on granting modifications (*i.e.*, the modification was warranted due to undue hardship, would not negatively affect the public interest, and comported with the purpose and intent of the Township's ordinances). *See* R.R. at 69a; SALDO § 22-308. In reviewing the modification request, the Planning Commission would have scrutinized it for compliance with the SALDO, so the Planning Commission's advisory approval recommendation implicitly showed that it had concluded that the modification request satisfied the SALDO's modification requirements, even before Catholic Cemeteries sent its second letter.

held a hearing regarding Catholic Cemeteries' Application and steep slope modification request. On March 16, 2020, the Board reconvened and voted to grant Catholic Cemeteries' desired modification and, separately, to give conditional final approval to the Application. The Board formalized its votes on March 30, 2020, when it issued its written Decision.

Concerned Citizens responded to these approvals by filing two separate appeals with Common Pleas, one each regarding the Application and the aforementioned modification. Common Pleas consolidated Concerned Citizens' appeals and, after taking no additional evidence, affirmed the Board's Decision on November 19, 2020. In response, Concerned Citizens filed the instant appeal with our Court.[4]

## II. Discussion

Concerned Citizens challenges the Board's Decision on a number of bases, which we have reordered and summarized as follows.[5] First, the Board improperly granted Catholic Cemeteries' desired modification, because Catholic Cemeteries failed to establish the existence of undue hardship that prevented it from developing

---

[4] Concerned Citizens filed a single notice of appeal with our Court on December 18, 2020, regarding both of the statutory appeals that had been consolidated, and adjudicated, by Common Pleas. *See* Notice of Appeal at 1. This was legally permissible under the circumstances and, as such, there was no need for Concerned Citizens to file separate notices of appeal regarding each of the consolidated matters. *See Always Busy Consulting, LLC v. Babford & Co., Inc.*, 247 A.3d 1033, 1042-43 (Pa. 2021); *Com. v. Young*, 265 A.3d 462, 475-78 (Pa. 2021).

[5] Where a court of common pleas takes no additional evidence, our standard of review in the context of a land use appeal is limited to determining whether the local governing body that issued the challenged decision abused its discretion or committed an error of law. *Miravich v. Twp. of Exeter, Berks Cnty.*, 54 A.3d 106, 110 n.4 (Pa. Cmwlth. 2012). A local governing body abuses its discretion when it makes factual findings that are not supported by substantial evidence. *Id.* "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Rural Route Neighbors*, 960 A.2d 856, 860 n.4 (Pa. Cmwlth. 2008).

5

the Property in conformance with the Grading Ordinance. Concerned Citizens' Br. at 20-21. Second, the Board should not have granted the modification, because Catholic Cemeteries did not show that this modification was the minimum necessary to allow for the Property's development. *Id.* at 21. Third, Catholic Cemeteries was not entitled to its desired modification of the Grading Ordinance's requirements, because this modification poses a threat to the health, safety, and welfare of the community. *Id.* at 24-26. Fourth, the Board erred by using the Property's entire 104.73-acre area, rather than just the portion that was part of the at-issue land development project, as the denominator when calculating the percentage of steeply sloped and landslide-prone areas that would be disturbed as a result of the project. *Id.* at 22. Finally, Catholic Cemeteries never presented its February 12, 2020 letter to the Planning Commission, in violation of the SALDO. *Id.* at 22-24. Concerned Citizens further asserts that this letter constituted a revised Application and, thus, Catholic Cemeteries was legally required to submit it to the Planning Commission for its consideration as a prerequisite for securing the Board's approval of the desired modification. *Id.*

Pursuant to Section 512.1(a) of the Pennsylvania Municipalities Planning Code (MPC),[6]

> [a] governing body . . . , if authorized to approve applications within the [SALDO], may grant a modification of the requirements of one or more provisions if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of the ordinance is observed.

---

[6] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10512.1(a).

53 P.S. § 10512.1(a). In addition, we have held that a governing body may waive or modify a SALDO requirement "where a development offers a substantial equivalent to a subdivision requirement, where an additional requirement would offer little or no additional benefit, and where literal enforcement of a requirement would frustrate the effect of improvements." *Monroe Meadows Hous. P'ship, LP v. Mun. Council of Mun. of Monroeville*, 926 A.2d 548, 553 (Pa. Cmwlth. 2007). In keeping with these statutory and judicially established standards, Section 503(8) of the MPC authorizes municipalities to enact SALDO

> [p]rovisions for administering waivers or modifications to the minimum standards of the ordinance in accordance with [S]ection 512.1 [of the MPC], when the literal compliance with mandatory provisions is shown to the satisfaction of the governing body or planning agency, where applicable, to be unreasonable, to cause undue hardship, or when an alternative standard can be demonstrated to provide equal or better results.

53 P.S. § 10503(8). These parameters set the minimum threshold for modifying a requirement imposed through a SALDO and allow local governing bodies to "relax [such a requirement] upon proof less rigorous than that required in order to obtain a variance from [a] [z]oning [h]earing [b]oard." *Telvil Constr. Corp. v. Zoning Hearing Bd. of E. Pikeland Twp.*, 896 A.2d 651, 656 (Pa. Cmwlth. 2006); *see Brandywine Vill. Assocs., LP v. E. Brandywine Twp. Bd. of Supervisors* (Pa. Cmwlth., No. 499 C.D. 2020, filed July 20, 2021), slip op. at 19-20, 2021 WL 3046662, at *10;[7] *Tioga Pres. Grp. v. Tioga Cnty. Plan. Comm'n,* 970 A.2d 1200, 1205 (Pa. Cmwlth. 2009).

---

[7] Unreported Commonwealth Court opinions issued after January 15, 2008, may be cited for their persuasive value. *See* Internal Operating Procedures of the Commonwealth Court Section 414(a), 210 Pa. Code § 69.414(a).

The Township has availed itself of this delegated power by enacting Section 22-308 of its SALDO, which provides:

> 1. The Board . . . may grant a modification of the requirements of one or more provisions of this chapter[, *i.e.*, of the SALDO,] if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of this chapter is observed.[8]
>
> 2. All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of this chapter involved and the minimum modification necessary.
>
> 3. The request for modification shall be referred to the Planning Commission for advisory comments.
>
> 4. The Board . . . shall keep a written record of all action on all requests for modifications.

SALDO § 22-308. Though the SALDO does not subsume the entirety of the Grading Ordinance, it nevertheless expressly incorporates Section 9-110.5 of the Grading

---

[8] Per Section 22-102, the SALDO

> [was] established for the purpose of assuring sites suitable for building purposes and human habitation; to provide for the harmonious development of the Township in accordance with the Comprehensive Development Plan; for the coordination of existing development with proposed development within the Township; and for adequate open spaces, proper traffic flow, recreation, light and air, and proper distribution of population, thereby creating conditions favorable to the health, safety, morals and general welfare of the citizens.

SALDO § 22-102.

Ordinance by reference. *See id.* § 22-602.5.[9] Thus, per Section 22-308, a developer may request that the Board grant a modification of the SALDO's requirements, including the steep slope regulations established through Section 9-110.5 of the Grading Ordinance.

Turning to Concerned Citizens' claim that Catholic Cemeteries was required to establish that it would suffer undue hardship in the absence of its desired modification, we determine that this argument is without merit. Our decision in *Valenti v. Washington Township,* 737 A.2d 346 (Pa. Cmwlth. 1999), is instructive. In that case, the appellants asserted that any modifications of the relevant SALDO requirements could only be permitted in the event an applicant established that undue hardship would result from enforcing those requirements' literal terms. *Id.* at 347-48. As in this matter, the SALDO in *Valenti* stated that a modification could be granted in the event of undue hardship, but also directed an applicant to expound in written form upon the "unreasonableness or hardship on which the [modification] request [was] based[.]" *Id.* at 348. Reading these two provisions together, we held that an ambiguity existed, because they enabled an applicant to seek a modification due to hardship *or* unreasonableness, but appeared to authorize the municipality to grant the modification *only* on the basis of hardship. *See id.* Construing that ambiguity in the applicant's favor, we ruled that the *Valenti* SALDO allowed for a modification of its requirements in the event of undue hardship *or* unreasonableness. *Id.*; *cf. Akin v. S. Middleton Twp. Zoning Hearing Bd.,* 547 A.2d 883, 886 (Pa. Cmwlth. 1988) (stating that "subdivision ordinances must be strictly construed

---

[9] Section 22-602.5, which is part of a broader portion of the SALDO titled "Land Requirements," reads as follows: "Steep Slopes. See steep slope standards in [Grading Ordinance § 9-110.5] 'Steep Slopes' . . . , which standards are incorporated herein by reference as if set forth in full herein." SALDO § 22-602.5.

against [a] municipality"). We come to the same conclusion here and, as such, hold that Catholic Cemeteries was under no obligation to satisfy the undue hardship standard in order to obtain its desired modification. Furthermore, though the Board did not address or apply the unreasonableness standard in its Decision, we are constrained to ignore the substantive impact of that omission, because Concerned Citizens failed to raise that as an issue before Common Pleas or our Court.

However, we do find merit in Concerned Citizens' assertion that Catholic Cemeteries was not entitled to its desired modification, because Catholic Cemeteries failed to show that the modification would produce the minimum necessary deviation from Section 9-110.5 of the Grading Ordinance. This is due to the wording of the Township's SALDO.

> Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See Bailey v. Zoning Bd. of Adjustment of City of Phila.*, . . . 801 A.2d 492[, 502] ([Pa.] 2002). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa.C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage).

*Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006).

> Alternatively, when the words in an ordinance are not explicit, the legislative body's intent may be ascertained by considering, among other things, the ordinance's goal, the consequences of a particular interpretation of the ordinance, and interpretations of the ordinance by an administrative agency. *See* 1 Pa.C.S. § 1921. Furthermore, in determining the proper interpretation of an ordinance, courts and agencies shall also presume that the legislative body "[did] not intend a result that is absurd, impossible of execution or unreasonable." *See* [*id.*] § 1922; [*Cnty.*] *of*

10

> *Allegheny v. Moon* [*Twp.*] *Mun*[.] *Auth.*, . . . 671 A.2d 662, 666 ([Pa.] 1996).

*Bailey*, 801 A.2d at 502.

Here, Section 22-308 of the SALDO states, in relevant part:

> 1. The Board . . . may grant a modification of the requirements of one or more provisions of this chapter[, *i.e.*, of the SALDO,] if the literal enforcement will exact undue hardship because of peculiar conditions pertaining to the land in question, provided that such modification will not be contrary to the public interest and that the purpose and intent of this chapter is observed.

> 2. All requests for a modification shall be in writing and shall accompany and be a part of the application for development. The request shall state in full the grounds and facts of unreasonableness or hardship on which the request is based, the provision or provisions of this chapter involved *and* the minimum modification necessary.

SALDO § 22-308 (emphasis added). Clearly, the plain language of the SALDO provisions obligate the Board to grant a modification only in the event that modification constitutes the minimum necessary relief. As such, the Board erred in granting Catholic Cemeteries' desired SALDO modification without first determining whether it was the minimum necessary to afford relief. Instead, the Board simply ignored this requirement entirely, neglecting to make any factual findings or legal conclusions on that point.[10] Rather, the Board largely based its

---

[10] Catholic Cemeteries argues that it did present evidence to the Board that its proposed modification was the minimum necessary to provide it with relief. *See* Catholic Cemeteries' Br. at 19. However, this "evidence" was merely a conclusory claim by Mr. Miller in the second letter that the request called for "the minimum modification necessary," as well as testimony in which he stated that the affected steep slopes would be prone to landslides unless they were regraded and that Catholic Cemeteries had elected to embark upon this project because it was running out of existing gravesite space at North Side Catholic Cemetery. *See* R.R. at 69a, 1386a-87a, 1452a-54a. None of this "evidence," however, pertains to whether the proposed modification was the minimum necessary to afford relief. Thus, even if the Board had correctly addressed the minimum modification requirement, it remains that Catholic Cemeteries failed to present any evidence that **(Footnote continued on next page…)**

11

decision on its determination that granting the modification would be in the Township's interest, because, in the Board's view, Catholic Cemeteries' land development project would ultimately result in increased stabilization of the affected steep slopes. *See* Decision, Conclusions of Law (C.L.) ¶¶1-4, 11-14.

The Board cited to *Valenti* in support of this conclusion, but, in doing so, misinterpreted that case. In making this error, the Board stated that *Valenti* stands for the proposition that "[the Board] may grant a request for a [SALDO modification or] waiver which it deems in the interest of the Township." *Id.*, C.L. ¶4. *Valenti*, though, does not enable a local governing body to approve a proposed SALDO modification based solely upon a determination that it is in the affected municipality's interest to take such a step. Rather, the public interest factor is but one component of the multifactorial analysis required by the MPC and, in many instances, by the affected municipality's SALDO.[11] Indeed, the *Valenti* court made that point by citing to Section 512.1 of the MPC, *i.e.*, the very part of the MPC that, as discussed above, establishes minimum standards for SALDO modifications. *See* 737 A.2d at 349 (citing 53 P.S. § 10512.1). Furthermore, the *Valenti* court's reference to *Hallett's Wood Homeowners' Association v. Upper Mt. Bethel Township Planning Commission*, 688 A.2d 748 (Pa. Cmwlth. 1997), does not contradict our reasoning here. *See Valenti*, 737 A.2d at 349. The *Hallet's Wood* Court did not reference any case law or statutory law in support of its conclusion

---

would have justified a conclusion that the proposed modification would, in fact, produce the minimum deviation from Section 9-110.5 of the Grading Ordinance that was required in this situation.

[11] Even where a municipality's SALDO modification provision is broadly or vaguely worded, and does not place any constraints upon its exercise of the power conveyed through that provision, the municipality is still bound to apply the standards established by the MPC and our case law. *See Ellzey v. Upper Gwynedd Twp. Bd. of Comm'rs* (Pa. Cmwlth., No. 990 C.D. 2019, filed November 19, 2020), slip op. at 19 n.16, 2020 WL 6799151, at *8 at n.16.

that SALDO modifications could be granted on the basis of public interest. *See* 688 A.2d at 750-51. However, it appears that, in context, the *Hallet's Wood* court was merely making the point that such modification requests are not to be as heavily scrutinized, or sparingly granted, as zoning variances. *See id.* Neither *Hallet's Wood* nor *Valenti* or, for that matter, any other opinion issued by this Court, support a conclusion that municipalities have some sort of free-floating permission to grant SALDO modifications on the basis of public interest alone or in disregard of the requirements imposed by the MPC and each municipality's SALDO. Thus, the Board's interpretation of *Valenti* was erroneous, as was its failure to require Catholic Cemeteries to prove that its desired modification of Section 9-110.5 of the Grading Ordinance was the minimum necessary to provide relief under the circumstances.

### III. Conclusion

In light of the foregoing, we reverse Common Pleas' November 19, 2020 order.[12]

_____
ELLEN CEISLER, Judge

Judge Wallace did not participate in the decision of this case.

---

[12] As we have resolved this appeal in Concerned Citizens' favor, we decline to reach the remainder of its arguments.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

The Concerned Citizens of     :
Ross Township,     :
           Appellant     :
    :
      v.     :   No. 1301 C.D. 2020
    :
Ross Township and The Catholic     :
Cemeteries Association of the     :
Diocese of Pittsburgh, Inc.     :

**O R D E R**

AND NOW, this 13th day of September, 2022, it is hereby ORDERED that the Court of Common Pleas of Allegheny County's (Common Pleas) November 19, 2020 order, through which Common Pleas affirmed the Board of Commissioners of the Township of Ross' March 30, 2020 decision, is REVERSED.

_____
ELLEN CEISLER, Judge