IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eric R. Thompson and Lisa Del Gotto, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1356 C.D. 2016 |
| | : | Argued: February 6, 2017 |
| Board of Supervisors of Warrington | : | |
| Township, The Cutler Group, Inc., | : | |
| and Toll PA XIV, L.P., Brian R. | : | |
| Price, Trustee of the Illg 2006 Family | : | |
| Irrevocable Trust and Ernst A. Illg | : | |
| and Brian R. Price Co-Trustees of | : | |
| the Residuary Trust of Magdalene | : | |
| Illg and Ernst A. Illg, Individually | : | |

BEFORE: HONORABLE MARY HANNAH LEAVITT, President Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                          FILED: March 23, 2017

Eric R. Thompson and Lisa Del Gotto (Objectors) appeal an order of the Court of Common Pleas of Bucks County (trial court) quashing their appeal of the Warrington Township Board of Supervisors' approval of a final subdivision plan submitted by The Cutler Group, Inc. (Cutler). Intervenors are Cutler; Toll PA XIV, L.P.; Brian R. Price, Trustee of the Illg 2006 Family Irrevocable Trust; Ernst A. Illg and Brian R. Price, Co-Trustees of the Residuary Trust of Magdalene Illg;

and Ernst A. Illg.[1]  The trial court quashed Objectors' appeal as untimely. Specifically, it held that Objectors waived all issues with respect to Cutler's final plan because they did not timely appeal the approval of the preliminary plan, which was substantially the same as the final plan.  Objectors assert that they were deprived due process with respect to Cutler's preliminary plan and, thus, its approval by the Township was void *ab initio*.  Thus, their appeal of the final plan is timely.  Discerning no merit to Objectors' claims, we affirm.

## Background

The underlying facts of this case are not in dispute.  In 1997, Ernst Illg, Magdalene Illg, Richard Urwiller, Arthur Poley, Toni Pooling, Warrington Investments, Inc., R. Richard Stauffer, and Ted Kelman, all property owners in the Township's Residential Agricultural District (RA District), filed curative amendment challenges to the zoning restrictions on their land.  On February 18, 1997, they entered into a settlement with the Township (1997 Agreement), which, *inter alia*, created transferrable development rights (TDRs)[2] for their properties. The 1997 Agreement identified the maximum number of dwelling units that would be permitted, and it required the Township to "proceed promptly … to advertise and adopt the amendments to the Zoning Ordinance and Zoning Map which are necessary to carry out [the 1997 Agreement]."  1997 Agreement at 10; R.R. 480a.

---

[1] Intervenors participated in the trial court proceeding by filing notices of intervention on September 19, 2013.  However, only Cutler presented evidence in that proceeding.

[2] Objectors challenged the building restrictions imposed on their properties.  By creating TDRs, which are severable from the land itself, Objectors could sell their development rights to other objectors seeking to develop their property.  In this way, the Township was able to achieve its overall goal of controlling development in the Township.  1997 Agreement at 3-4; Reproduced Record at 473a-74a (R.R. __).

2

On July 15, 1997, the Board of Supervisors enacted Zoning Ordinance No. 97-0-6, which amended 13 provisions of the Warrington Township Zoning Ordinance (Zoning Ordinance).[3] Zoning Ordinance No. 97-0-6 created three new RA Districts; provided for TDRs in the new districts; rezoned a portion of the R-3 District to RA; and revised the zoning map. Zoning Ordinance No. 97-0-6 stated that its purpose was to settle the curative amendment challenge to the "three-acre zoning in the RA-Residential Agricultural District … and that it was in the best interests of [the Township's] residents to settle the curative amendments with the challengers." ZONING ORDINANCE No. 97-0-6, Whereas Clause at 1; R.R. 524a.

On January 31, 2007, Cutler filed an application for subdivision and land development plan approval with the Township. The application sought approval to subdivide a plot of land referred to as the "Illg Tract," which consisted of a 74.94-acre parcel of land in the Township's RA District. Specifically, the plan proposed to subdivide the Illg Tract into 95 single-family detached dwelling lots, using 59 TDRs purchased from other property owners.

A dispute arose between the Township and Cutler over the methodology for determining the number of TDRs needed for its subdivision plan. To effect its development plan, Cutler planned to purchase TDRs from C&M Investor Partnership II (C&M). Because of the dispute, the transaction between C&M and Cutler stalled. As a result, C&M and two other interested parties filed suit in the trial court against the Township. On July 1, 2009, the parties settled the litigation with an agreement that established the methodology for determining the

---

[3] WARRINGTON TOWNSHIP ZONING ORDINANCE OF 1985, *as amended*, §§101-2509.

number of TDRs required in the applicable zoning district. This 2009 Agreement was approved by the trial court.

On May 16, 2013, the Township Planning Commission (Planning Commission) considered, *inter alia*, Cutler's application for preliminary subdivision plan approval.[4] The minutes recorded the receipt of public comments. Objector Eric Thompson commented that he had not yet received all of the documentation on Cutler's preliminary plan he had requested of the Township under the Right-to-Know Law;[5] however, he reviewed documents at the Township building.

The minutes also showed that Thompson complained that Cutler's proposed development would reduce the flow of storm water to his property, thereby depriving his land of water. He also complained that the preliminary plan did not provide enough settlement basins, which would cause flooding on his property. Finally, he challenged the preliminary plan's proposal to use a state park for emergency access, which was illegal, and for using an outdated traffic study from 2007.

The Planning Commission voted to recommend approval of Cutler's preliminary plan. On May 28, 2013, the Board of Supervisors passed Resolution 2013-R-27, thereby approving Cutler's preliminary plan to subdivide the Illg Tract into 95 single-family detached dwelling lots by purchasing 59 TDRs.[6] No party appealed the preliminary plan approval. Cutler then submitted its final subdivision

---

[4] The minutes are contained in Part I of the Certified Record.

[5] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101 – 67.3104.

[6] Intervenors claim that Objectors were also present at this meeting, but Objectors do not address this contention.

4

plan. On August 13, 2013, the Board of Supervisors approved the final subdivision and land development plan, which was substantially the same as the approved preliminary plan.

On September 10, 2013, Objectors appealed the Board's approval of the final plan. Objectors claimed that the 1997 Agreement and the 1997 amendments to the Zoning Ordinance prompted by that agreement were invalid. They also contended that the 2009 Agreement was invalid. Objectors argued that Cutler's final plan violated several provisions of the Zoning Ordinance, which were impermissibly waived by the Board of Supervisors. Thus, Objectors asserted, the Board's approval of Cutler's preliminary subdivision plan was void *ab initio*.

On September 9, 2015, Cutler filed a motion to quash Objectors' land use appeal. Cutler argued that Objectors did not allege that there was any substantial difference between the preliminary subdivision plan and the final plan. Because Objectors did not appeal the preliminary plan approval within 30 days, their land use appeal of the final plan was time-barred.

In response, Objectors claimed that the Board of Supervisors' approval of Cutler's preliminary subdivision plan was void *ab initio* because it was based on the 1997 Agreement, which was unconstitutional and circumvented the Zoning Board's authority under the Pennsylvania Municipalities Planning Code (MPC).[7] Thus, their appeal of the final plan approval was timely.

On February 12, 2015, the trial court held a hearing on Cutler's motion to require Objectors to post bond, which it requested for the stated reason that Objectors' land use appeal was frivolous and the delay was causing it financial

_____

[7] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101 – 11202.

5

harm.  The trial court denied the request for a bond.  It then considered Cutler's motion to quash the land use appeal.

Cutler argued that Objectors were present at the meetings before the Commission and the Board of Supervisors, but they did not appeal the Board's approval of Cutler's preliminary plan.  Cutler pointed out that Section 1002-A(a) of the MPC[8] states that appeals of "all land use decisions … shall be filed within 30 days[.]"  53 P.S. §11002-A.  Cutler argued that because Objectors did not appeal the decision on the preliminary plan, their appeal was untimely and must be quashed.

Objectors countered that they were exempt from the statutory appeal period.  They claimed that the Board of Supervisors' approval of Cutler's plan was void *ab initio* because it was based upon the 1997 and 2009 Agreements, which were illegal.  Objectors contended that the Township and the Board of Supervisors lacked authority to waive the zoning requirements as was done in the 1997 and 2009 Agreements.  They also argued that Cutler's subdivision plan involved three parcels, *i.e.*, Tax Parcels 12, 13 and 13-1.  However, the 1997 Agreement addressed only Parcel 13, not Parcel 12.  The 2009 Agreement purported to cover the entire 75-acre Illg Tract, but the entire Illg Tract was not part of the 1997 Agreement.

Cutler responded that Objectors were missing the point.  The 1997 Agreement involved 35 acres of the Illg Tract for the purpose of establishing TDRs on that property that could be conveyed to other objectors.  However, the entirety of the property could be developed by acquiring TDRs from other properties.  This

---

[8] Section 1002-A of the MPC was added by Section 101 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. §11002-A(a).

was the purpose of the 2009 Agreement. Thus, Cutler argued, Objectors' argument was meritless.

Cutler presented the testimony of Thomas Gockowski, a professional engineer, who is employed by Carroll Engineering Corporation, the Township's Engineer. Gockowski personally reviewed Cutler's preliminary plan. He explained that when the Board of Supervisors approved the preliminary plan it directed the Township Engineer to meet with Objector Thompson, upon his request, to address his concerns regarding stormwater management. Gockowski testified that Thompson never requested a meeting.

Gockowski reviewed the preliminary plan in accordance with the 1997 Agreement, which granted TDRs to 35 acres of the Illg Tract. Gockowski pointed out that the Zoning Ordinance amendments were done to allow TDRs to be conveyed throughout the entire RA District, where the Illg Tract is located.

Gockowski stated that he reviewed the final plan only to confirm that some required technical refinements had been made. No substantive changes were needed for final plan approval, and none were made. Gockowski testified that the final plan conformed in all respects with the Zoning Ordinance in effect at the time the subdivision plan was originally filed, which was in 2007. He testified that the Board of Supervisors did not waive any zoning requirements in its approval of the final plan.

The trial court next conducted a hearing on February 27, 2015, to allow Objectors to present evidence. They presented the testimony of Thomas J. Comitta, a town planner and registered landscape architect. Comitta opined that because Parcel No. 12 was not identified in the 1997 Agreement, it could not be included in Cutler's development. He also stated that 20 of the 95 lots in Cutler's

7

plan did not comply with the Zoning Ordinance and would require a variance from the Zoning Board. Specifically, Lot 22 was non-compliant because it contained a wetland area. Lots 19, 20, and 21 were encumbered by a stream easement, which exceeds the Zoning Ordinance's threshold on the degree to which partially unusable land can encumber a lot. Lots 1, 7, 8, 42 and 49 contain stream alluvial soils, requiring that they remain as open space. Lots 44, 45, 46, 52, 53, 58, 59, 60, 73, 74, and 75 contain prime agricultural soils, on which the Zoning Ordinance does not permit any building.

On cross-examination, Comitta acknowledged that the MPC requires that a subdivision plan be reviewed in accordance with the zoning ordinance in effect on the date the plan was submitted. Comitta also acknowledged that the Zoning Ordinance sections he cited in his testimony were enacted in 2008 and 2011, well after Cutler filed its subdivision and land development plan.

The trial court quashed Objectors' appeal. It held that their failure to appeal the Board of Supervisors' approval of Cutler's preliminary plan within 30 days barred its subsequent appeal of the final plan. The trial court rejected Objectors' argument that the Board's approval of the preliminary plan was void *ab initio*, making their appeal timely. Objectors now appeal to this Court.[9]

## Appeal

Objectors contend that the trial court erred. They contend that their appeal of the approval of the final subdivision and land development plan was not

---

[9] Our standard of review in a land use appeal where the trial court has quashed, or dismissed, the appeal determines whether the trial court abused its discretion or committed an error of law. *Highway Materials, Inc. v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539, 543 n.2 (Pa. Cmwlth. 2009). On questions of law, our scope of review is plenary. *Kassouf v. Township of Scott*, 883 A.2d 463, 469 (Pa. 2005).

8

untimely. They acknowledge the obligation to appeal a subdivision and land development plan at every stage. However, Objectors contend the Board of Supervisors' approvals were void *ab initio*, which entitles them to appeal the final plan.

**Analysis**

We begin with a review of the requirements that relate to an appeal of a subdivision and land development plan. Section 1002-A(a) of the MPC imposes a 30-day deadline on all land use appeals. It states:

> All appeals from all land use decisions rendered pursuant to Article IX [relating to the zoning hearing board and other administrative proceedings] shall be taken to the court of common pleas of the judicial district wherein the land is located and shall be filed within 30 days after entry of the decision as provided in 42 Pa.C.S. §5572 (relating to time of entry of order) or, in the case of a deemed decision, within 30 days after the date upon which notice of said deemed decision is given as set forth in section 908(9) of this act. It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions.

53 P.S. §11002-A(a).[10] "[A]ll land use decisions" have been construed to include the approval of a preliminary plan, even though it will always be followed by a

---

[10] Objectors also claim that Section 5571.1 of the Judicial Code authorizes an exemption from the 30-day appeal period. 42 Pa. C.S. §5571.1. This section requires the party seeking an exemption to "establish[ ] that because of the particular nature of the alleged defect in statutory procedure, the application of the time limitation … would result in an impermissible deprivation of constitutional rights." 42 Pa. C.S. §5571.1(c). The trial court found that Section 5571.1 applied to appeals from ordinances, resolutions and similar actions of a political subdivision and was not applicable to land use appeals because Section 1002-A of the MPC mandates the appeal **(Footnote continued on the next page . . .)**

9

final plan before it can be implemented. *See In re Busik*, 759 A.2d 417 (Pa. Cmwlth. 2000).

In *Busik*, objectors appealed a final plan approval, even though they had not appealed the preliminary plan. This Court held that a preliminary plan that includes conditions constitutes a final decision. Thus, a failure to appeal the preliminary plan bars the appeal of a final plan that is substantially the same as the preliminary plan. *Busik*, 759 A.2d at 421. This, we concluded, is the import of the language in Section 1002-A(a) of the MPC that "[a]ll appeals from all land use decisions ... shall be filed within 30 days after entry of the decision." 53 P.S. §11002-A(a).

In addition, as noted by Intervenors, Section 508(4)(i) of the MPC mandates that "when a preliminary application has been duly approved, the applicant shall be entitled to final approval in accordance with the terms of the approved preliminary application as hereinafter provided." 53 P.S. §10508(4)(i). Stated another way, "final approval of a subdivision plan is automatic unless the final plan is different from the preliminary plan." *Graham v. Zoning Hearing Board of Upper Allen Township*, 555 A.2d 79, 81 (Pa. 1989). Here, Cutler's final subdivision plan was substantively the same as the preliminary plan and Objectors do not contend otherwise.

Objectors acknowledge the need to appeal a decision on a preliminary plan within 30 days. However, Objectors focus on the exception set forth in the final sentence of Section 1002-A(a) of the MPC, which states:

---

**(continued . . .)**
period in land use appeals. We agree that Section 1002-A of the MPC applies in land use appeals. In any event, both statutes provide the same extension of the identical time period, where defects in the statutory procedure are alleged.

10

It is the express intent of the General Assembly that, except in cases in which an unconstitutional deprivation of due process would result from its application, the 30-day limitation in this section should be applied in all appeals from decisions.

53 P.S. §11002-A(a). Objectors argue that not to permit their appeal of the final plan would deprive them of due process. Objectors support their due process exceptions with two cases: *Glen-Gery Corporation v. Zoning Hearing Board of Dover Township*, 907 A.2d 1033 (Pa. 2006), and *Luke v. Cataldi*, 932 A.2d 45 (Pa. 2007).

*Glen-Gery* involved a challenge to an ordinance several years after it was enacted. The zoning hearing board dismissed the challenge as untimely. However, the Supreme Court held that "a challenge to the procedure in enacting a statute or ordinance cannot be dismissed summarily as time-barred because, if the procedural defect implicating constitutional due process concerns such as notice were proven, it would render the statute void *ab initio*." *Glen-Gery*, 907 A.2d at 1044-45.

In *Luke*, township residents filed a mandamus action to challenge the grant of conditional use permits issued to a mining company. The trial court dismissed the residents' action as an untimely land use appeal, and this Court affirmed. The Supreme Court reversed for the stated reason that the residents alleged that the board of supervisors had not given notice to the public or held hearings on the mining permit applications. These allegations, if proven, would render the permits void *ab initio*. Accordingly, the Supreme Court remanded for further proceedings.

Intervenors respond that these cases are inapposite. Objectors have not identified any defects in the process by which Cutler's subdivision plan was

11

approved or in the procedures by which the Zoning Ordinance was amended in 1997. Objectors refer the Court to *Residents Against Matrix v. Lower Makefield Township,* 802 A.2d 712 (Pa. Cmwlth. 2002), on which the trial court relied.

In *Residents Against Matrix*, the township and a developer entered into a master plan agreement for the development of a commercial and industrial office park. The developer then entered into an agreement with Matrix to purchase the property subject to the zoning ordinance being amended in accordance with the master plan. Following a public meeting, the board of supervisors approved the master plan agreement and amended the zoning ordinance. Six months later, a group of residents appealed, claiming that the township's agreement to amend the zoning ordinance constituted a *de facto* amendment of the zoning ordinance and was void *ab initio*. The trial court quashed the residents' land use appeal as untimely. Before this Court, the residents argued that the township could not, by contract with a third party, circumvent the zoning ordinance. This Court rejected their claim. We explained that under Section 1002-A of the MPC, the 30-day appeal deadline could be enlarged where a governing body has failed to comply with its statutory notice requirements, either with respect to an application or the adoption of zoning ordinance amendments. A mere agreement to seek an ordinance amendment was not, itself, a zoning ordinance amendment and did not implicate a township citizen's due process.

Objectors baldly assert that the 1997 Agreement superseded the Zoning Ordinance. It did not. The 1997 Agreement was no more than an agreement by the Township to seek to amend the Zoning Ordinance. Objectors did not show that the amendments to the Zoning Ordinance did not comply with all notice requirements. Nor did they show that the review of Cutler's subdivision

12

plan failed to follow the required statutory procedures. As in *Residents Against Matrix*, Objectors have not substantiated their claim that the approval of Cutler's preliminary plan violated the Zoning Ordinance or any procedures in the MPC.

Objectors advance several other void *ab initio* arguments. They are also unavailing.

First, Objectors cite Part III, paragraph A of the 1997 Agreement, which states:

> Zoning Ordinance amendments adopted by the Township to implement the provisions of Part I of this Stipulation shall include provisions authorizing the Board to grant waivers from the provisions of the Zoning Ordinance consistent with the provision of this Part III, paragraph A.

1997 Agreement at 31; R.R. 501a.[11] Construing "Board" to mean the Board of Supervisors, Objectors argue that the 1997 Agreement unlawfully sought to divest

---

[11] In full, Part III, paragraph A, states as follows:

A. <u>Modification of Development Criteria</u>. Township recognizes that as a result of unique circumstances or conditions which may exist with respect to any one or more of the [properties at issue] it may not be possible for an applicant for subdivision approval to obtain the maximum number of dwelling units permitted under paragraph I.A. of this Stipulation. The Township may modify or waive any provision of the SALDO [Subdivision and Land Development Ordinance] which has the effect of impeding the ability to develop the maximum number of dwelling units permitted under paragraph I.A. of this Stipulation on any of the Properties. Prior to granting such waiver or modification, the Township shall satisfy itself that such modification or waiver will not adversely impact public health, safety, or the general welfare of the Township. Township may require the applicant to submit additional information to assist it in evaluating the requested waiver or modification. Zoning Ordinance amendments adopted by the Township to implement the provisions of Part I of this Stipulation shall include provisions authorizing the Board to grant waivers from the provisions of the Zoning Ordinance consistent with the provisions of this Part III, paragraph A.

1997 Agreement at 30-31; R.R. 500a-01a.

13

the Zoning Board of jurisdiction and that the "Board" improperly gave Cutler zoning variances.

Intervenors respond that "Board" refers to the Zoning Board. Further, although Objectors insist that the Board of Supervisors granted variances to Cutler, they have offered no evidence to support that claim.

At the trial court hearing, Gockowski, who reviewed Cutler's plan for the Township, testified that Cutler's subdivision plan fully complied with the Zoning Ordinance. Objectors' witness, Comitta, conceded that the Zoning Ordinance provisions he cited were enacted after Cutler submitted its plan. As we have explained, under Section 508(4)(i) of the MPC, "an application for subdivision approval, whether preliminary or final, is governed by the ordinance in effect at the time the subdivision application was filed." *Miravich v. Township of Exeter, Berks County*, 54 A.3d 106, 113 (Pa. Cmwlth. 2012).[12]

Next, Objectors point to another sentence in the 1997 Agreement, which states:

> The provisions of this Stipulation shall control and shall be deemed to supersede any inconsistent provisions of this

---

[12] Section 508(4)(i) states, in relevant part:

(4)   Changes in the ordinance shall affect plats as follows:

(i)   From the time an application for approval of a plat, whether preliminary or final, is duly filed as provided in the subdivision and land development ordinance, and while such application is pending approval or disapproval, no change or amendment of the zoning, subdivision or other governing ordinance or plan shall affect the decision on such application adversely to the applicant and the applicant shall be entitled to a decision in accordance with the provisions of the governing ordinances or plans as they stood at the time the application was duly filed.

53 P.S. §10508(4)(i).

14

> Ordinance, including the number of dwelling units calculated pursuant to Form 307, and the environmental restrictions set forth in Article III.

1997 Agreement at 26; R.R. 496a. Objectors contend that the Board of Supervisors' agreement to amend the Zoning Ordinance was unlawful because it did not comply with the statutory notice requirements. We reject the proposition that an agreement to propose a zoning amendment itself requires public notice to be valid. The time for public participation is during the ordinance adoption.[13]

Objectors' final claim is that the 1997 Agreement does not refer to Parcel 12, but only to Parcel 13. Likewise, the 2007 Zoning Ordinance amendment refers to Parcel 13 and not Parcel 12. Again, Objectors do not explain why this claim, even if valid, renders the preliminary plan void *ab initio*.

Cutler explained that the 1997 Agreement and subsequent amendment to the Zoning Ordinance allowed property owners in the RA District to use TDRs, which are defined as:

> [T]he attaching of development[] rights to specified lands which are desired by a municipality to be kept undeveloped, but permitting those rights to be transferred from those lands so that the development potential which they represent may occur on other lands where more intensive development is deemed to be appropriate.

ZONING ORDINANCE NO. 97-0-6 at 1; R.R. 524a-25a. To develop the entire Illg Tract, Cutler purchased TDRs from C&M as authorized by the 2009 Agreement. It

---

[13] In a one-paragraph argument, Objectors state that public notice and hearing requirements ensure the public's right to participate in the consideration and enactment of land use ordinances; failure to provide for the required notice and hearing violates due process. This is a correct recital of the law, but Objectors do not specify at what point the Township, the Board of Supervisors or the Planning Commission violated this precept.

was not necessary that either the 1997 Agreement or the Zoning Ordinance amendments specify how the TDRs would be used in the future.

## Conclusion

We affirm the trial court. Objectors did not appeal the approval of Cutler's preliminary plan for subdivision and land development within 30 days. It is too late for them to challenge the final plan, which is the same as the preliminary plan. There is an exception to the 30-day deadline when the municipality has deprived an objector of due process by not complying with the statutory procedures that apply to the review of a land use application or to the adoption of a land use ordinance. However, Objectors have given the Court no grounds for applying the exception.

For all of the foregoing reasons, we affirm the trial court's order.

_____
MARY HANNAH LEAVITT, President Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Eric R. Thompson and Lisa Del Gotto, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 1356 C.D. 2016 |
| | : | |
| Board of Supervisors of Warrington Township, The Cutler Group, Inc., and Toll PA XIV, L.P., Brian R. Price, Trustee of the Illg 2006 Family Irrevocable Trust and Ernst A. Illg and Brian R. Price Co-Trustees of the Residuary Trust of Magdalene Illg and Ernst A. Illg, Individually | : | |

## **O R D E R**

AND NOW, this 23rd day March, 2017, the order of the Court of Common Pleas of Bucks County in the above-captioned matter, dated June 30, 2016, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge